VOORHEES v. THE CHICAGO, ROCK ISLAND & PACIFIC R'Y CO.

1. **Railroads:** BREACH OF CONTRACT TO FURNISH CARS: AUTHORITY OF STATION AGENT. Plaintiff applied to the defendant's station agent at O. for cars to ship hogs the next day. There was no telegraph communication at O., and the agent directed plaintiff to go to L., a station on another branch of defendant's road, where there was a telegraph, and have the agent at L. order the cars for the shipment of the hogs at O. Plaintiff did so, and the agent at L. sent a request for the cars to the train dispatcher of his line of road for the cars to be furnished at O., on the other line. The agent at L. afterwards informed plaintiff that he had received an answer, and that the cars would be at O. the next day. Plaintiff accordingly had his hogs at O. the next day for shipment, but the cars did not come until two days later. Plaintiff sues for his damages caused by the delay. *Held* that he could not recover, because it

was shown that the agent at L. had no actual authority to bind the defendant by a contract for cars at O., and such contract was not within the apparent scope of his authority as station agent at L. (*Wood v. Chicago, M. & St. P. R'y Co.*, 68 Iowa, 491, distinguished.)

2. **Evidence**: HEARSAY: CONDITION OF MARKET. Plaintiff's testimony as to what his broker told him about the condition of the market on a certain day was mere hearsay, and should have been excluded.

3. **Costs**: CONTINUANCE: PLAINTIFF'S FAULT. Where, after both parties had rested, plaintiff asked and obtained leave to introduce other testimony which he had omitted by inadvertence, and the court then granted a continuance on defendant's motion, on the ground that its witnesses had departed, and it could not then rebut the new evidence, *held* that the costs of the trial were properly taxed to plaintiff, because, by his inadvertence, the trial was rendered useless.

*Appeal from Marion District Court.*

THURSDAY, OCTOBER 28, 1886.

ACTION for the recovery of damages caused, as plaintiff alleges, by defendant's failure to perform its contract to furnish cars at a specified time for the shipment of a lot of hogs to Chicago. The cause came on for trial at the January term, 1885, of the district court, and, after the parties had each rested, defendant's counsel filed a motion to direct the jury to return a verdict for it. After that motion was argued, and before any order upon it had been entered, the plaintiff asked leave to introduce evidence on a material question which his counsel stated they had overlooked by inadvertence. The court granted leave to introduce the evidence; but, after it had been introduced, defendant's counsel moved the court to continue the cause, alleging, as a ground therefor, that when the parties rested they had discharged their witnesses, who had immediately left the court, and they were consequently not prepared at that term to meet the additional evidence which plaintiff had been permitted to introduce. The court sustained this motion, and taxed the costs of the term to plaintiff. At the same term plaintiff filed a motion to set this order aside, which, at the August term, 1885, was overruled. At that term the cause again

came on for trial on the merits, and there was a verdict and judgment for plaintiff. Plaintiff [appeals from the order continuing the cause, and taxing the costs to him, and defendant appeals from the final judgment; its appeal being first perfected.

*T. S. Wright* and *L. Kinkead*, for appellant.

*Bousquet & Earle*, for appellee.

Reed, J.—On the sixteenth of October, 1882, plaintiff went to Olivet, a station on defendant's road, for the purpose of making arrangements for the shipment, on the next day, of five carloads of hogs from that station to Chicago. There was no telegraph office at Olivet, and the station agent informed plaintiff that an order for the necessary cars could not be forwarded by mail in time to receive them for the next day. Plaintiff claims that the agent requested him to go to Leighton, a station a few miles away, and have an order for the cars telegraphed from there, and stated that the agent there frequently ordered cars for Olivet. Leighton is on the line of road between Keokuk and Des Moines, while Olivet is on what is known as the "Washington & Knoxville Branch." Both lines are operated by defendant, and they cross each other at Knoxville Junction, a few miles from Olivet and Leighton. The Washington & Knoxville branch has a direct Chicago connection, and it was by that line that plaintiff desired to ship his hogs. He went to Leighton, and, as he claims, informed the agent there that the agent at Olivet requested that an order for the cars be telegraphed from there. The agent accordingly sent a dispatch to the train dispatcher on the Keokuk & Des Moines line, requesting him to send the cars to Olivet in time for the shipment the next day. The name of the Olivet agent was signed to the dispatch, and plaintiff saw it before it was sent. He also testified that the agent afterwards told him that he had received an answer to the dispatch, and assured him that the

cars would be at Olivet in such time that the shipment could be made on the next day. He claims that, relying on this assurance, he drove his hogs to Olivet, and was ready to ship at the designated time. The cars were not delivered at Olivet, however, until the nineteenth, and the hogs were shipped on that day. If they had been shipped on the seventeenth, they would have arrived at Chicago on the nineteenth. As it was, they reached there on the twenty-first. A material decline occurred in the price of hogs in the Chicago market between the nineteenth and twenty-first. By this action plaintiff seeks to recover the cost of keeping the hogs from the seventeenth to the time they were shipped, and the difference between what he received for them when he sold them and the amount he would have received if he had been able to place them on the market on the nineteenth. The Olivet and Leighton agents were both examined on the trial. The former denied that he requested plaintiff to go to Leighton, and the latter testified that he did not give plaintiff any assurance that the cars would be at Olivet the next day; and it was proven that the agent at Leighton had no express authority to transact business for defendant, except that pertaining to his own station; also that the train-master, to whom said dispatch was sent, had no express authority to send cars to stations on the other line.

I. The district court gave the following instruction to the jury: "If you find from a preponderance of the evidence that plaintiff applied to the station agent of defendant at Olivet for cars in which to ship his hogs to Chicago, such cars to be furnished at a specified time and place, and thereupon such agent informed plaintiff that he could not telegraph from Olivet, and requested him to go to Leighton station, on another branch or division of defendant's railroad, and have the station agent at that station telegraph to the proper authorities for such cars, and you find that plaintiff did request such agent at Leighton to so telegraph, and you find

1. RAILROADS: breach of contract to furnish cars; authority of station agent.

that such agent telegraphed to the train dispatcher of defendant at Keokuk for such cars to be delivered or furnished at Olivet station at a specified time, and thereafter informed plaintiff that he had received a reply to the effect that such cars would be furnished at such specified time and place, and you further find that plaintiff relied in good faith upon such information, and, in pursuance thereof, drove his hogs to Olivet, and had them there ready for shipment at said time, and defendant failed to have such cars there at such time, and you find that plaintiff suffered damage in consequence of such failure, then plaintiff would be entitled to recover the damages, if any, resulting therefrom."

If defendant is liable on the hypothesis stated in this instruction, such liability must be upon the ground that its failure to have the cars at Olivet at the time in question was a breach of some contract obligation existing between it and plaintiff. Defendant, being a common carrier, is bound to furnish shippers reasonable facilities for the transportation of their property, and would doubtless be responsible to one who had demanded transportation facilities for any damages he may have sustained in consequence of its failure to afford such facilities within a reasonable time after such demand. Plaintiff, however, is not seeking to recover on the theory that there was an unreasonable delay after demand in furnishing the cars, but his claim is that defendant was under obligation to furnish them at a particular time, and that he has been damaged by its failure to furnish them at that time. The doctrine of the instruction is that if plaintiff, at the request of the agent at Olivet, went to Leighton, and requested the agent there to telegraph to the proper officer or agent for the cars, and that agent, acting upon that request, sent the dispatch, and afterwards stated to plaintiff that he had received an answer to it, and that the cars would be at Olivet on the next day, and plaintiff acted on that assurance, defendant was bound to furnish the cars at the specified time, and was answerable in damages for its failure to do so.

That defendant is bound by such contracts as are entered into in its name, by its agents, within the actual or apparent scope of their authority, is, of course, conceded. It was held in *Wood v. Chicago, M. & St. P. R'y Co.*, 68 Iowa, 491, that a station agent who was authorized to contract for the shipment of property from his station was presumed to be empowered to contract with reference to all the ordinary and necessary details of the business, and that when, from the nature of the property to be shipped, or other circumstances, it was necessary or usual to arrange or contract for the shipment of the property in advance of its delivery, the company was bound by his contract to funish the necessary cars at the specified time, whether he had any express power to make the contract or not. The ground of the holding is that, by placing him in charge of its business at that station, the company held him out as possessing authority to make the contract, and shippers were warranted in dealing with him on the assumption that he had full power in the premises. In the present case, however, the agent by whom it is alleged the contract was made, was not held out by defendant as possessing any power with reference to the subject of the contract. He was not in fact authorized to contract for the shipment of property from Olivet; nor was he held out as possessing such authority. His duties were limited to his own station, and there was nothing in the circumstances which warranted plaintiff in the assumption that he had authority to contract with reference to business at Olivet. The facts of the case do not, therefore, bring it within the principle announced in *Wood v. Chicago, M. & St. P. R'y Co., supra*, and the doctrine of the instruction finds no support in that case.

The fact that the agent at Olivet requested plaintiff to go to Leighton, and procure the agent there to send the order for the cars, is not material; for his authority in the premises was neither actually nor apparently enlarged by that request. If the officer or agent to whom the order was

transmitted had directed him to make the agreement for the furnishing of the cars on the next day, defendant would probably have been bound by it; but, under the instruction, plaintiff's right of recovery is not dependent on whether such direction was in fact given, but upon whether the agent represented that it had been given. The declaration of the agent at the time of the transaction is thus made proof of the extent of his powers. The instruction, we think, is clearly erroneous.

II. On the trial, plaintiff was permitted, against defendant's objection, to testify to the statements of the broker who sold his hogs in Chicago, as to the condition of the market on the nineteenth of October, and as to the price at which he would have been able to sell them if they had arrived in Chicago on that day. The evidence was mere hearsay, and should have been excluded.

2. EVIDENCE: hearsay: condition of market.

III. It was within the discretion of the district court to permit plaintiff, on the first trial after the parties had rested, to introduce further testimony. (Code, § 2799.) It was also within the discretion of the court to grant a continuance of the cause, if satisfied that substantial justice would thereby be more nearly obtained. (Section 2749.) The continuance was granted for the reason that plaintiff had asked and obtained leave to introduce evidence material to the case after both parties had rested, and after defendant's witnesses had left the court. The costs of that trial were rendered useless by the continuance, and the continuance was rendered necessary by plaintiff's failure to introduce his evidence at the proper time. The costs were therefore properly taxed to him.

3. COSTS: continuance: plaintiff's fault.

On plaintiff's appeal the judgment will be affirmed.
On defendant's appeal it will be reversed.