GULF, COLORADO & SANTA FE RAILWAY COMPANY
v. G. W. COLE.

No. 893.

1. **Assignment of Errors—Questions of Law and Fact.**—Questions of law involved in charges given or refused can only be raised by assignments of error predicated upon the action of the court in giving or refusing such charges. Such questions can not be raised by assignments attacking the verdict.

2. **Same—Error Must Be Indicated.**—Where neither the assignment nor any proposition thereunder points out the supposed error which the assignment in general terms charges, it must be regarded as waived.

3. **Station Agent—Through Shipping Contract.**—It was shown that the station agent for six months prior to the shipment in contention had been issuing through bills of lading to points beyond the line of appellant's road, although he had been instructed not to make such contracts, it not appearing that the shipper knew or by proper diligence could have known of such instructions. *Held,* that the station agent had authority to execute a through contract for shipment extending beyond the lines of the company.

4. **Through Shipping Contract.**—See contract for carrying beeves from Texas to Chicago, Ill., and for return ticket for shipper, held as not exempting the carrier from liability for injuries to the person of the shipper incurred beyond its lines. The exemption in the contract expressly related to injury to the stock, and did not extend to personal injuries inflicted beyond its lines on the shipper's return.

5. **Abandonment of Contract.**—See facts held to sustain a verdict against the plea that a shipping contract from Texas to Chicago had been abandoned by the shipper signing another shipping contract upon leaving Kansas City for Chicago.

6. **Wrongful Ejection of Passenger.**—See facts held to sustain a verdict for the wrongful ejection of plaintiff from a passenger car.

APPEAL from Brown. Tried below before Hon. W. J. WINGATE. The opinion contains a statement.

*J. W. Terry* and *Chas. K. Lee,* for appellant.—1. (1) It is not within the implied authority of a local agent of a railway company to enter into or bind his company for the transportation of freight or passengers to points beyond its line of road.

(2) Where a local agent of a railway company enters into a contract for the transportation of freight or passengers beyond the line of the particular company for which he is acting, in order for that contract to be binding upon a railroad company, it must be alleged and proven that such agent was specially authorized to enter into the same.

(3) The undisputed evidence showing that defendant's local station agents were forbidden to enter into contracts of the character in question for transportation of freight or passengers beyond its own line, such contract was not binding on defendant beyond its own line, and the evidence showing that plaintiff's injuries, if any, were sustained on the line of another railroad, the verdict should have been for defendant. Grover v. Railway, 70 Mo., 672; Burroughs v. Railway, 100 Mass., 26; Hutch. on Carr., sec. 152a; 21 Am. and Eng. Ry. Cases, 38; Wood's Ry. Law, 450, 451; Railway v. Stults, 15 Am. and Eng. Ry.

Cases, 97; Voorhees v. Railway, 29 Am. and Eng. Ry. Cases, 32; Railway .v. Anderson, 82 Texas, 516.

2. The verdict is contrary to the law and the evidence, in that by the terms of the contract with plaintiff, defendant limited its liability for injury or damages to its own line of road, and the evidence shows that the matter complained of, and upon which this action is based, occurred on the Atchison, Topeka & Santa Fe Railway, and after plaintiff had left defendant's line of road.

3. The undisputed evidence showing that when plaintiff's stock got to Kansas City he availed himself of the privilege secured to him by his contract of stopping there, and that he thereafter executed a new contract with the Atchison, Topeka & Santa Fe Railway Company for transportation of his stock to Chicago, Ill., he thereby abandoned the contract with the defendant, and was not entitled to claim any rights under the same beyond Kansas City.

No brief for appellee reached the Reporter.

KEY, ASSOCIATE JUSTICE.—Appellee (plaintiff below) instituted this suit in the District Court of Brown County to recover $10,020 damages alleged to have been sustained by reason of a wrongful ejec-tion from a train at Corwith Junction, near Chicago, Ill., alleging that the appellant herein and the Atchison, Topeka & Santa Fe Railway Company were the owners of a continuous line of railway from Zephyr, Texas, to Chicago, Ill.; that the said two roads were under the same management and under a common ownership and control, and if not under such management, then they were the agents each of the other, and fully authorized to make contracts for the transportation of freight and passengers over the entire continuous line; that on or about No-vember 2, 1891, defendant entered into a contract with plaintiff at the town of Zephyr to transport him and five car loads of stock from said town of Zephyr to Chicago; that said contract was executed on behalf of defendant through its local agent at Zephyr, Texas, J. D. Harris, which said contract provided for plaintiff's return carriage from the said city of Chicago to the town of Zephyr, the contract being attached to said petition and marked exhibit "A;" that on or about the 7th day of November, 1891, in the city of Chicago, the defendant (appel-lant herein), through its agent at Chicago, issued the plaintiff a "drover's ticket," which said drover's ticket was attached to the peti-tion and made an exhibit thereto; that thereafter plaintiff boarded the train at Chicago and presented to defendant's agent said stock contract and said drover's pass, and demanded transportation thereon; that the conductor refused to honor said tickets, and demanded payment of fare, and on plaintiff's failure to pay the same, said conductor violently ejected him, to his great damage, etc.

Defendant answered by general and special exceptions, by general denial, and special answers, as follows: 1. By special denial of any

agency between it and the Atchison, Topeka & Santa Fe Railway Company, any joint and common management or control between the two roads; but, to the contrary, that they were separate organizations and entirely independent of each other. 2. That if any contract was entered into, the contract only provided for the transportation of plaintiff and his cattle to Purcell, I. T., and specially limited defendant's liability to its own line, and that plaintiff's damages were sustained beyond defendant's line, for which it was not liable. 3. That if said contract provided for the transportation of plaintiff to Chicago and return, then the same was executed wholly without authority on the part of said Harris, local agent, executing the same; that under the rules and regulations of the defendant, and by special notice on said live stock contracts, defendant's local agents were forbidden to enter into contracts for the transportation of drovers beyond its line, which fact plaintiff knew, or ought to have known by the exercise of ordinary diligence. 4. That if defendant was held bound by said contract of shipment, then that on arrival of plaintiff's stock at Kansas City, Mo., plaintiff voluntarily entered into another contract for the transportation of himself and cattle from Kansas City, Mo., to Chicago, Ill., and that, if he was ever ejected from any train, such ejection was made by the agents of said Atchison, Topeka & Santa Fe Railway Company, and while plaintiff was travelling under contract made with said company. 5. That plaintiff at Kansas City, Mo., entered into a new contract with the Atchison, Topeka & Santa Fe Railway Company, and by the rules and regulations of said company said contract was not good for return transportation, but at Chicago, Ill., had to be exchanged for a drover's ticket; that, in pursuance of such contract and such rules and regulations, he surrendered said contract and received a drover's pass, good for transportation from Chicago to Kansas City; that on boarding the train he failed and refused to either exhibit said drover's pass or any authority for riding on said train, and refused to pay his fare, and was ejected without any unnecessary force; that he was ejected for failing to comply with the reasonable rules and regulations of the road on which he was travelling.

Trial December 7, 1892, before a jury, and judgment for the plaintiff for $500. Motion for new trial was made and overruled, and the case has been brought to this court by appeal.

The testimony shows the following facts:

1. The plaintiff, Cole, made a contract with J. D. Harris, the defendant's station agent at Zephyr, Texas, for the shipment of five cars of cattle from Zephyr, Texas, on defendant's road, to Chicago, Ill. Said contract was executed at the time alleged in plaintiff's petition, was in writing, and corresponded with exhibit "A" attached to plaintiff's petition, which is a copy of said contract, and is made a part of this finding.

2. The plaintiff shipped his cattle under said contract, and went with them himself to Chicago. On November 7, 1891, the plaintiff left

Chicago to return to Zephyr, Texas, and while on the Atchison, Topeka & Santa Fe Railroad, and upon his refusal to pay fare, the conductor put him off the train at a station called Corwith. The plaintiff's testimony as to the force used, the manner, place, and time of his ejection from the train, condition of the weather, etc., will support the $500 verdict returned by the jury, if his expulsion from the train was wrongful.

Additional facts will be stated in discussing the grounds relied upon for a reversal.

*Opinion.*—1. Before separately considering the questions presented in appellant's brief, it is proper to note that, except as hereinafter stated, no complaint is made against the action of the court in giving or refusing charges. This fact, it seems to us, is important, because some of the questions presented under assignments of error which only assail the verdict of the jury are questions of law, which more appropriately relate to the charge of the court. The jury obtain the law from the court's charge; and when the dissatisfied litigant assigns error upon the verdict, or upon the action of the court in overruling a motion for a new trial based upon the ground that the verdict is not supported by the law and evidence, as to that assignment he acquiesces in the correctness of the charge by which the jury were governed; and the question for decision then is, considering the charge as correct, will the testimony sustain the verdict? Questions of law involved in charges given or refused can only be raised by assignments of error predicated upon the action of the court in giving or refusing such charges.

2. The ninth assignment charges error in that portion of the court's charge which directly and specifically submitted the plaintiff's theory of the case to the jury. Neither the assignment, nor any proposition thereunder, points out or indicates the supposed error which the assignment, in general terms, charges; and, under the statute and rules, the assignment must be regarded as waived. The tenth and eleventh assignments, which relate to the action of the court in refusing to give certain special charges asked by appellant, are subject to the same objection, and must be treated in like manner. These three assignments are not propositions within themselves; and the second and third propositions submitted under them and the fourth assignment grouped together, are not germain to any of the assignments except the fourth, which charges that the court erred in not granting the defendant a new trial, because the weight of evidence showed that the plaintiff was ejected for refusing to exhibit his ticket or pass or pay his fare. That question will be considered further on. The charges referred to—that given as well as those refused—have no bearing on the questions hereinafter discussed.

3. By the fifth assignment of error, it is urged that the testimony fails to show that J. D. Harris, appellant's station agent at Zephyr, Texas, had authority to make a contract binding upon appellant for

transportation to Chicago, Ill.—a point beyond the line of its own road.

On this subject the court instructed the jury as follows: "You are further instructed, that if you believe from the evidence that the agent of defendant at Zephyr, Texas, J. D. Harris, had no authority to make the contract sued upon, and that plaintiff knew that said agent had no authority to make said contract, or, by the use of such care and diligence as an ordinarily prudent person under similar circumstances would have used, could have known that said agent had no such authority, then you should find for the defendant. But although you may believe from the evidence that said agent, Harris, had no authority to make said contract, yet if you further believe from the evidence that the plaintiff did not know that said agent did not have such authority, and that by the use of such care and diligence as an ordinarily prudent man under similar circumstances would have exercised could not have ascertained the want of authority in said agent to make said contract, then the fact that said agent had no authority to make said contract would have no effect on plaintiff's rights under said contract."

There is no assignment of error assailing this charge, which, it will be observed, assumes that Harris had implied authority to make the contract. In another portion of the charge, which is not objected to, the court told the jury that the obligation sued on was a through contract. Under the assignment of error now under consideration (which is addressed alone to the verdict), appellant contends, that as its road extended only to Purcell, I. T., and not all the way to Chicago, Ill., Harris had no implied authority to make the contract binding it to transport appellee to and from any point beyond its own line; that the burden was upon appellee to allege and prove that Harris had special authority to make the contract; and that, as the undisputed evidence shows that Harris was forbidden to make such contracts, and that appellee was injured while on another road, the verdict should have been for appellant. These propositions, in the main, embrace questions of law relating to and materially different from the rules of law stated in the charge above quoted; and they can not be presented under an assignment of error predicated upon the verdict, or the action of the court in overruling a motion for a new trial based upon the proposition that the verdict is not supported by the law or the evidence. This is a sufficient reason for overruling the assignment of error under consideration. But inasmuch as Harris was appellant's station agent at Zephyr, and as he testified, that for about six months prior to the shipment in question he had been issuing bills of lading to points beyond the line of appellant's road, we feel constrained to hold that he had authority to make the contract, although it was shown that he had instructions from his principal not to make such contracts, it not appearing that appellee knew, or by the exercise of proper diligence could have known, of the existence of such instructions. Hull v. Railway, 66 Texas, 620; Railway v. Cook, ante, p. 376. We do not

regard the mere fact that Harris had previously received printed instructions not to issue such contracts, as sufficient proof that appellee by the exercise of reasonable diligence could have ascertained that fact. If Harris assumed to have authority to issue such contracts when he knew he had been instructed not to do so, we see no reason for the conclusion that he would have disclosed the limitation upon his authority if questioned concerning the matter. We think the most reasonable conclusion is, that he had forgotten the existence of the limitation at the time the contract in suit was made.

4. Appellant's sixth assignment of error is as follows: "The court erred in not granting defendant a new trial on the fifth ground of its motion therefor, to wit: because the verdict is contrary to the law and the evidence, in that by the terms of the contract with plaintiff, defendant limited its liability for injury or damages to its own line of road, and the evidence shows that the matter complained of, and upon which this action is based, occurred on the Atchison, Topeka & Santa Fe Railway, and after plaintiff had left defendant's line of road."

In so far as this suit is concerned, the trial court interpreted the contract sued on as a through obligation, without exemption from liability for injuries sustained on other roads. And it is to be noted that no special charge on this subject was asked, and no complaint is urged against the court's charge on this phase of the case. But assuming that the assignment of error under consideration requires a construction of the contract sued on, a majority of the court do not think that appellant is protected from liability for the injuries complained of in this suit by the terms of the contract.

In Railway v. Baird, 75 Texas, 256, it is held that, in the absence of stipulations to the contrary, the company making the contract for through carriage will be responsible for loss or injury occurring on connecting lines, through facts that would fix liability on it for loss occurring on its own line. See also Railway v. Pratt, 22 Wall., 123.

The correctness of this doctrine is not disputed by appellant's counsel; but the contention is, that in the contract sued on appellant has stipulated for its nonliability for any and all losses or injuries occurring upon other roads.

The contract contains the following stipulations bearing on the question now under consideration:

"Now, therefore, in consideration of the mutual covenants and conditions herein contained, the company agrees to transport for the shipper the live stock described below, and the parties in charge thereof, as hereinafter provided, viz: Five cars, said to contain 118 head of cattle, from Zephyr, Texas, station on the company's road, to Chicago, station on the company's road, and at said last named station to deliver the same to a carrier whose line may be a part of the route to ——, hereinafter called the place of destination, and on so delivering the same to said carrier, this contract shall be deemed fully performed by

the company, and all liability of the company whatever for the carriage of or on account of said stock shall be thereby ended, it being distinctly understood that the company assumes no obligation whatever on account of the carriage of said stock beyond said last named station on its own road, and that the company shall not be liable for any damage to, injury of, or delay of said stock, or for anything whatever that may happen to the same after such delivery, or tender of delivery, in case such carrier shall refuse to receive the same, and the shipper so expressly contracts and agrees.   At the request of the shipper the company has ascertained the amounts of the freight rates of the carrier over whose line the stock will have to pass in the route to the place of destination, which route has been selected by the shipper, and the sum of such rates, not including the cost of feeding and watering the stock, added to the rate of the company between same named stations on its own line, amount to $99.30 per standard car, which amount, if per carload, is based on a car twenty-nine feet or thirty and a half feet in length, or any length between those figures, and is subject to established percentages of increase or decrease for longer or shorter cars, in case the stock are transported in longer or shorter cars, on any part of the route, the correctness of which information the company guarantees, it being distinctly understood, and the shipper so contracts, that such guarantee shall not in anywise be construed to extend the liability of the company on account of said stock beyond said delivery, or tender thereof, at said last named station on the company's road, as hereinbefore stipulated and agreed, and that this is not a through contract or through bill of lading, but a contract to carry to the last named station on the company's road, and no further, and that the company shall not be held liable for any damages whatever that may accrue to the shipper or to the stock in case the several carriers, or either of them, shall refuse to carry or deliver the stock on the payment of said rates, but shall be liable to pay only to the shipper, in thirty days after notice in writing from the shipper, the amount which he may have been compelled to pay in excess of such rate above named, which shall be in full satisfaction and discharge of such guarantee.   It is further distinctly understood and agreed by the shipper, that the other carriers in the said route only transport stock at such rates under contracts of similar import to this one, and that if the shipper, or his or their agents in charge of the stock, shall fail or refuse to execute and deliver to each carrier in the route, on demand from such carrier, a contract similar in terms to this one, or such contract as such carrier may require, then the company shall be discharged from all liability on said guarantee.   *  *  *   For the consideration aforesaid the shipper hereby further agrees, that said persons in charge of said stock under this contract, who will be transported in accordance with the rules, regulations, and conditions on the back hereof, which are made a part of this contract, shall remain in the caboose car attached to the train while the same is in motion," etc.

On the back of the contract, under the "Rules for Passing Drovers," is the following, among other provisions:

"When shipments are made on the conditions stated within, free transportation over the Gulf, Colorado & Santa Fe Railway Company will be furnished to a person or persons in charge of the stock in proportion to the number of cars," etc.

On the back of the contract are the following indorsements:

"Pass on freight trains only, G. W. Cole, parties in charge of stock, from Zephyr, Texas, to Chicago.   (Good only on train with the stock.)
"J. D. HARRIS, Station Master.

"NOTE.—Agents will make two (2) copies of contract, giving one to shipper, and forwarding the other to General Freight Office, Galveston.

"GULF, COLORADO & SANTA FE RAILWAY COMPANY—DROVER'S RETURN PASS.—For return pass, the agent at shipping station will fill up blank below for such of the persons herein below named as do actually return, and none others, drawing pen through remaining lines. Agent will refuse to enter any name or names upon the contract or return pass but those of owners or employes, without regard to passes guaranteed by number of cars.

"NOV. 2D, 1891.—Pass G. W. Cole from Chicago to Zephyr, Texas, if presented within fifteen days from November 2d, 1891.   ☞Not good for stop over.☜        W. H. MASTERS, Gen'l Freight Agent.

"Countersigned:   J. D. HARRIS, Station Master.
"Approved:   C. O. WHEELER, General Manager.

"NOTICE TO CONDUCTORS.—For purpose of identification, conductors will require parties holding this contract and presenting the same for return passage, to sign name below.   Each party to sign name in your presence, which signature must correspond with that on opposite side.        "G. W. COLE.

"Punched by mistake: WOODWARD, No. 5, 11–7–91.

"GULF, COLORADO & SANTA FE RAILWAY Co.—We, the undersigned persons in charge of the live stock mentioned in the within contract, in consideration of the free pass granted us by the Gulf, Colorado & Santa Fe Railway Company, and of the other covenants and agreements contained in said contract, including the rules and regulations at the head thereof, and those printed on the back hereof, all of which for the considerations aforesaid are hereby accepted by us, and made a part of this our contract, and all the terms and conditions of which we hereby agree to observe and be severally bound by; and whereas travel on freight trains is necessarily more dangerous than upon passenger trains, we will be subject to the same risks as the em-

ployes on such trains are; and we do hereby expressly agree, that during the time we are in charge of said stock, for the purposes in said contract stated, to assume, and do hereby assume, all risks incident to such employment, including the negligence of the employes of said company to us for any injury or damage sustained by us during such time for which it would not be liable to its regular employes.

"G. W. Cole."

It is reasonably clear from the foregoing provisions of the contract and passes, construed in the light of the evidence of plaintiff and Harris, the agent who issued them, that appellant, for the consideration therein stated, obligated itself to transport five cars of cattle for appellee from Zephyr, Texas, to Chicago, Ill., and that, as a part of said contract, appellee was to have transportation for himself to and from Chicago without additional cost. In fact, appellant's counsel in his argument admits that it was a through contract, but contends that it limits appellant's liability to its own line.

The contract does restrict appellant's liability, so as to relieve it from responsibility for loss of or injury to the cattle occurring on the line of any other road; but we fail to find in it any stipulation which in express terms, or by reasonable implication, exempts it from liability for wrongs against appellee committed by such persons and under such circumstances as would render it liable in the absence of such a stipulation. The exemption, as stated in the contract, is from liability "for the carriage of or on account of said stock." The contract declares, that the company "assumes no obligation whatever on account of the carriage of said stock beyond said last named station on its own road;" that appellant's guarantee shall not in anywise be construed to extend the liability of the company "on account of said stock" beyond said delivery; that the company shall not be held liable for any damage whatever that may accrue to the shipper or to the stock, in case the several carriers, or either of them, shall refuse to carry or deliver "the stock;" but no provision is found releasing it from any other liability. It is true that the contract for appellee's transportation is intimately connected with the contract for the transportation of his stock; in fact, they are one and the same contract, based upon the same consideration. But, in our opinion, that fact does not require the exemption from liability to be extended beyond what we believe to be the plain meaning of the words in which it is expressed. In so far as appellant's obligations are concerned, the contract divides itself into two parts. One obligation was to transport certain live stock from Zephyr, Texas, to Chicago, Ill.; the other obligation was to carry appellee on the same train with the stock from Zephyr to Chicago, and then bring him back to Zephyr. One was for the shipment of live stock; the other for the carriage of a passenger. The obligation for the transportation of the stock ended when the cattle reached Chicago and were delivered to the consignee. The acts upon which appellee's

cause of action is based were committed after that time, but before complete performance of the obligation to carry him as a passenger. Those acts were not on account of, nor in any manner connected with, the transportation of the stock; they were committed several hours after the shipment of the stock had been completed.

The printed provision, under the rules for passing drovers, wherein it is stated, that "when shipments are made on the conditions stated within, free transportation over the Gulf, Colorado & Santa Fe Railway Company will be furnished to a person or persons in charge of the stock," etc., should not control the express and specific terms of the contract and passes by which appellant agreed to transport appellee beyond the line of its own road. The provision referred to did not deprive appellant of the power to make a contract binding itself to furnish appellee with transportation over other roads; and if it be in conflict with the definite terms of the contract, it must yield. But such conflict does not necessarily exist.

This case is distinguishable from Railway v. Ions, 3 Texas Civil Appeals, 619, decided by this court. In that case, Mrs. Ions bought a ticket from San Angelo, Texas, to Waynesborough, Va., and signed a contract printed on the ticket, which contract contained the following stipulation: "In selling this ticket this company acts as agent, and is not responsible beyond its own line." Mrs. Ions carried with her a trunk, which was checked as baggage, and after it had passed from the defendant's road, but before it reached its destination, some of the articles therein were lost or stolen. On these facts, and construing the exemption clause above quoted, this court held, that the defendant railway company that sold the ticket, and was entitled to the benefit of the exemption clause, was not liable. In that case, the language securing the exemption is quite different from the language used in the exemption clause in the contract under consideration. There the language is general and comprehensive; here it is enumerative and specific.

5. It is claimed that the undisputed evidence shows, that when appellee's stock reached Kansas City he availed himself of the privilege, secured to him by his contract, of stopping there; and that he thereafter executed a new contract with the Atchison, Topeka & Santa Fe Railway Company for transportation of his stock to Chicago, and thereby abandoned his contract with appellant.

Appellee testified, that at Kansas City, Mo., he stopped with his cattle to feed and water and rest them; that according to the terms of the contract with defendant he had the right to stop at Kansas City if he desired to do so; that his cattle were unloaded into the pens of the railway company and driven from these pens across the river to other pens, where the stock were fed and cared for until ready to resume the journey; that they were reloaded from the last named pens; that while in said last named pens he placed the cattle in the hands of commission men to sell, but failed to make a sale; that the pens where the cattle were cared for belonged to some corporation in the city; that he talked

with other railroad agents about taking his cattle to Chicago, but the agent of the Atchison, Topeka & Santa Fe Railway Company claimed the right to ship the cattle, as they were on its road; that the agent of said Atchison, Topeka & Santa Fe Railroad had him sign the contract with said road; that when he signed same it was blank, and that the blanks were filled in after he signed same; that when he signed it he did not know that it would be filled up, and did not see said papers until the conductor of the train transporting cattle to Chicago from Kansas City gave it to him just as the train was pulling out; that he has been shipping cattle for twelve or fifteen years, and knows a live stock contract when he sees it; that it was this contract that he surrendered to Brand at Chicago, Ill., for the drover's pass; that he did not use said contract to pass himself from Kansas City to Chicago; that if it had a conductor's punch he knew nothing of it; that he did not pay any consideration whatever for the live stock contract signed by him at Kansas City; that said contract was handed to him and he was told to sign it, and he did so, knowing what it was, for he had a through contract; and that it was filled up over his signature—that is, the blanks in the printed contract were filled up after he signed it. "I left Zephyr on the 2nd of November, and got in Kansas City on the 4th, about 4 or 5 o'clock in the evening. I staid in Kansas City all next day. My stock was in Kansas City stockyards. They were there for the purpose of watering and feeding that night. I don't remember the names of the parties who own the stockyards. The stockyards were across the river from where we unloaded. The railroad company unloaded the stock and drove them across to the pens. They had no provision where they unloaded me to feed and water stock. It must be about 200 or 300 yards from there to the pens across the river. I don't know who owns the pens across the river. My stock staid there from the time they were unloaded until 8 o'clock the next morning. I placed them in the hands of a commission agent there and received offers on them, but did not sell any of them. I don't remember the commission agent's name. My feed bill was $3 a car. I paid it to the railroad company —the Santa Fe; the Atchison, Topeka & Santa Fe. I left on the first outgoing train I could get for Chicago."

Robert Brand testified, that plaintiff presented to him, on November 7, 1891, a contract which read from Kansas City to Chicago, covering a shipment of stock which originated in Texas, on which contract he issued a drover's ticket to Kansas City over the Atchison, Topeka & Santa Fe Railway; that he received in return a contract from Kansas City to Chicago. The stock contract referred to, attached to his (Brand's) deposition, provides for the transportation of five cars of stock from Kansas City stockyards to Chicago, consigned to G. W. Cole, having various limitations, and was signed by plaintiff.

The court submitted the question of abandonment of the contract to the jury; and we can not say that their finding against appellant on that issue is not sustained by the evidence.

6. We now recur to the question presented under the fourth assignment of error. Before they could return a verdict for the plaintiff, the jury were required by the court's charge to find, among other things, that, on the occasion when he was expelled from the train, he presented to the conductor the contract sued on and his return pass; and appellant contends, that on this issue the verdict is not supported by the evidence.

On this subject plaintiff testified, that after the train left Chicago the conductor thereof came to him and demanded his ticket, and he handed him the contract and drover's pass issued him by defendant company, and also a drover's pass issued to him in Chicago for return passage to Kansas City, Mo., the last named pass being at the time pinned to and folded in the live stock contract; that the conductor took the contract and pass, and put same in his pocket; that in a few minutes he came back to him and told him that he would have to pay his fare or get off the train, as he could not ride on the transportation offered; that on demand the conductor returned the contract and pass, and informed him that he would either have to pay his fare or get off the train at Corwith, the next stop; that at this time the train reached Corwith, and the conductor called him to get off; that he refused to leave the train, and the conductor ordered the porter, a big negro, to remove him; that before leaving Chicago on his return trip he called upon J. G. Miller, the freight agent at Chicago of the Santa Fe system, to put in his claim for damages for one head of cattle killed in this shipment; that he showed Mr. Miller the live stock contract made at Zephyr, Texas, and drover's pass issued by Brand at Chicago, Ill., and he said they were all right; that Miller pinned the drover's pass to the contract he had of defendant company, folded them together and gave them to him, and he put the papers in his pocket, and that evening, November 7, 1891, at about 6 o'clock p. m., boarded the train leaving Chicago for Kansas City, with the result above stated; that when he saw the conductor would not let him ride on the transportation offered by him he demanded its return; that the conductor, having punched the contract, wrote on it, "Punched through mistake," and signed his name to it and returned the papers to him.

We think this evidence sustains the verdict on this issue. A fair construction of the testimony leads to the conclusion, that it was contemplated by appellant that appellee and his stock would pass over the Atchison, Topeka & Santa Fe Railroad, and that appellee would return by the same route. His return pass, issued by Harris, was indorsed on the back of the contract; and as there is nothing in either requiring him to get his papers indorsed in Chicago, or get another pass there, it would seem, in so far as appellant is concerned, that the contract and passes issued by it entitled him to transportation over the Atchison, Topeka & Santa Fe Road. By these instruments, it agreed to furnish appellee free transportation to and from Chicago; and it was its duty, and not his, to make such arrangements with the Atchison,

Topeka & Santa Fe Railway Company as were necessary to a performance of the contract. Therefore, as the evidence shows that appellee, before he was ejected from the train, presented to the conductor his contract with appellant with his return pass indorsed thereon, as against appellant, his expulsion from the train was unlawful. But as appellee testified, that the agent of the Atchison, Topeka & Santa Fe Railway Company at Chicago had issued a pass to him; that said pass was folded inside of the contract; that the conductor took the contract, carried it away and kept it awhile, we are not prepared to hold that appellee's ejection from the train was not wrongful, even as against the Atchison, Topeka & Santa Fe Railway Company. The conductor could not rightfully assume, without examination, that the paper handed him by appellee did not entitle appellee to transportation, when an examination of it would have revealed the pass issued by the Atchison, Topeka & Santa Fe Railway Company.

7. It is claimed that the verdict is excessive; but if credence be given to the plaintiff's evidence we can not so hold. According to his testimony, in addition to the $20 additional expense incurred, his expulsion from the train caused him serious physical injuries.

The judgment will be affirmed.

*Affirmed.*

Delivered November 28, 1894.

DISSENTING OPINION.

FISHER, CHIEF JUSTICE.—I disagree with the majority of the court as to the disposition of this case, and will briefly state my reasons for so doing.

The right of appellee to transportation as a passenger over the appellant's road and connecting lines grows out of and is based on the contract of the shipment of the stock, which contract clearly and expressly, as admitted by the opinion of the court, exempts the appellant from loss or damages to the stock occurring on lines other than appellant's. In the opinion of the writer, the meaning to be given to the contract, as gathered from all of its stipulations when considered as a whole, exempts the appellant from injuries or damages occurring to the person of the shipper on the connecting lines of road. The main contract of shipment relates to the stock, and the transportation of the shipper simply incidentally springs from that contract. His rights as a passenger are based on that contract, and it seems that a rule that would operate fairly should require the liability of the carrier to be determined by that contract. It is, to say the least, an anomaly to deny a liability against the initial carrier for damages for breach of the main contract, and hold it liable for something that incidentally springs or results from it.

It has been held, that the right of a passenger to transportation of his baggage rests upon the contract made for the carriage of the pas-

senger, and that limitations or exemptions from liability imposed by the terms of the passenger's ticket for injuries occurring on connecting roads will apply to damages or loss of baggage occurring on other lines. Railway v. Schwarzenberger, 45 Pa. St., 214; Railway v. Ions, 3 Texas Civ. App., 619; Hutch. on Carr., 2 ed., secs. 715–718.

These authorities rest upon the principle, that the contract of carriage was in the main the contract to carry the passenger, and that the transportation of the baggage was simply incidental to that contract, and that the exemption from liability provided for in the contract would apply not only to what it in the main expressly agreed to carry, but what was transported as one of the incidents of the contract. This same principle should be applied to this case.

The doctrine is well settled in this State that the contracting carrier may limit its liability to its own line; and when the main contract provides for exemption from liability as to damages to the subject matter that brought into life the contract, in the opinion of the writer a just sequence of this exemption should relate to and affect rights that incidentally spring from the main contract, and that are dependent upon it.

There is another view of the question that should be considered. If the right of the appellee as a passenger is to be determined solely upon that part of the contract that relates to his transportation, and this for the reason that, no limitation appearing on its face, the appellant will be held liable for the entire distance to Chicago, although it is shown that the transportation is in part over other lines of road that the appellant does not control, it would seem that the assumption as a matter of law that the contract does give such a right is opposed by the weight of authority, which holds, that in such contracts it is a matter of fact, to be ascertained like other facts in a case, whether the initial carrier so contracting agreed or intended to become bound and liable for the transportation for the entire distance. Hunter v. Railway, 76 Texas, 196; 114 Mass., 47; 27 Am. and Eng. Ry. Cases, 265; 83 Texas, 519; 75 Texas, 259; 23 S. W. Rep., 827, and cases cited; Hutch. on Carr., 2 ed., secs. 145–170, where the cases upon this subject are fully stated and cited.

These authorities proceed upon the doctrine that a railway company is not a common carrier beyond its own line of road, and when it is so sought to be held liable, a contract to that effect must be shown, and that the rule that obtains in England and some of the American courts, that the receipt of goods marked for transportation beyond its line creates against the initial carrier a liability for the entire distance, is not the approved rule of law on the subject. And the principle further announced is, that in such contracts of through transportation over other lines of road the initial or contracting carrier is, in selling the ticket, supposed to act only as agent for such other lines; and to hold it liable beyond its own line, facts ought to be shown tending to show that it assumed such liability.

If these authorities establish the correct doctrine upon this subject —and which in my opinion is approved by the courts of this State— the conclusion is reached that the appellant, in providing the transportation of appellee to Chicago, in the absence of evidence to the contrary, acted only as the agent of the connecting lines over which he should travel, and that it is erroneous for this court, in the absence of such evidence, to declare that the contract upon its face fixes the liability of appellant for acts occurring on other lines of road. Myrick v. Railway, 107 U. S., 106.

With these views, I must express my nonconcurrence in the result reached by the majority of the court in disposing of this case.