W. A. McLagan, Appellant, v. Chicago & Northwestern Railway Company.

Connecting Carriers: STATEMENTS BY AGENT OF RECEIVING CARRIER. Where the contract between a carrier and a shipper, as evidenced by the bill of lading, is that the goods shall be transported over the carrier's line to a certain place, and delivered to another carrier for transportation to their destination, the receiving carrier is not bound by statements of its station agent as to the rate that would be charged by the connecting carrier, especially where there is no joint rate fixed.

EVIDENCE OF AGENCY. In an action by the shipper against the receiving carrier to recover the difference between the amount alleged to have been stated by the agent as the rate over the lines of the connecting carrier and that actually charged, the burden of proof to show that the station agent had authority to bind his company was on plaintiff.

Pleading. A general denial by defendant raised an issue as to whether the agent's statements bound the receiving carrier.

Appeal from Carroll District Court.—Hon. S. M. Elwood, Judge.

Friday, February 14, 1902.

Action for excessive freight charges. Judgment on directed verdict for the defendant. The plaintiff appeals. —Affirmed.

*Lee & Robb* for appellant.

*Hubbard, Dawley & Wheeler* for appellee.

Ladd, C. J.—The plaintiff bought and shipped over the defendant's railway to Chicago, Ill., and over the Baltimore & Ohio Railway from there to Cumberland, Md., two car loads of corn from Odebolt, Iowa, one from Correctionville, and three from Carroll. The rate exacted upon delivery at Cumberland by the Baltimore & Ohio Railway Company was 28 cents per 100 pounds. The plaintiff claims that, after having received a bid for 5,000 bushels of corn, he made inquiry of a bill clerk in the defendant's freight house at Carroll concerning the rate of carriage of corn in carload lots to Cumberland, who named 22½ cents per 100 pounds, and that in reliance on this rate the plaintiff bought and shipped the corn. On the other hand, the clerk denies having had any conversation on the subject, or being possessed of authority to fix the charges beyond the terminus of the defendant's lines. The freight charges were not inserted in the bill of lading, and whether plaintiff met with any loss in the transaction is not shown. Evidently, then, unless this clerk had authority to make contracts fixing freight charges beyond the defendant's road, the company is not liable. The record contains no evidence that such power had been expressly conferred, and, if possessed at all, it must have been because within the apparent scope of his duties. In the absence of the station agent, he acted in his stead, and in deciding the case he may as well be treated as having the same authority. That he might not negotiate shipments from places other than Carroll appears from *Voorhees v. Railway Co.*, 71 Iowa, 735. Nor do we think his employment in the company's local freight house at that place indicated authority to fix rates on connecting lines in remote portions of the country, over which the defendant did not undertake to carry prop-

erty. It may be that, if it had received the goods simply marked or directed to Cumberland, a point on a connecting line, a contract might be implied to carry to that place, and at the rate fixed by the local agent. *Angle v. Railroad Co.*, 9 Iowa, 487; *Mulligan v. Railway Co.*, 36 Iowa, 181; *Beard v. Railway Co.*, 79 Iowa, 527. This is on the theory that, as the company's business is that of a common carrier, it may undertake to convey property to points not reached by its line, and its agent, having the duty to receive goods for transportation, will be presumed to have authority to enter into such agreements in its behalf. But here there was no undertaking to carry the corn beyond the terminus of the defendant's road. The bills of lading receipted for the corn "subject to the conditions and regulation of the published tariff of said company to be transported over the line of this railway to ———, and delivered after payment in like good order to ———, a company or carrier (if same are forwarded beyond the lines of the company's road), to be carried to the place of destination; it being expressly agreed that the responsibility of this company shall cease at this company's depot at which same are to be delivered to such carrier." Then follows a form of guaranty of rates, left blank, based on specific conditions, and this provision: "It is further especially agreed that for all loss or damage occurring in the transit of said packages the legal remedy shall be against the particular carrier or forwarder only in whose custody the said packages may actually be at the time of the happening thereof, it being understood that the Chicago & Northwestern Railway Company assumes no other responsibility for the safe carriage of or safety than may be incurred on its own road." It was noted on the margin that transportation is to be "via B. & O. R. R." The contract was simply to transport the corn over its own line, and deliver at its depot to the Baltimore & Ohio Railway Company, and there all responsibility ended. In other words the contract was to carry over its

own line, and forward, according to the usual course of business, from its terminus. It was precisely that implied, under the holding in many of the states, from the receipt of goods marked for a particular destination beyond the terminus of its line, without an express undertaking to deliver at that point and in the states where this rule prevails the decisions are uniform to the effect that a local station agent may not bind his principal for transportation over connecting lines. *Grover & Baker Sewing Mach. Co. v. Missouri Pac. Ry. Co.,* 70 Mo. 672 (35 Am. Rep. 444); *Burroughs v. Railroad Co.,* 100 Mass. 26 (1 Am. Rep. 78); *Coates v. Railroad Co.,* 8 S. D. 173 (65 N. W. Rep. 1067); *Wait v. Railroad Co.* 5 Lans. 477; 4 Elliott, Railroads, section 1437; Hutchinson, Carriers, section 267 *et seq.*; 1 Wood, Railroads, 165. Not very much evidence seems to be required, however to carry the issue as to authority to the jury. *Ogdensburg, etc. Railroad Co. v. Pratt,* ·22 Wall. 123 (22 L. Ed. 827); *Page v. Railroad Co.,* 7 S. D. 297 (64 N. W. Rep. 137); *Mayall v. Railroad Co.,* 19 N. H. 122 (49 Am. Dec. 149); *Wilcox v. Railroad Co.,* 24 Minn. 269; *Pruit v. Railroad Co.,* 62 Mo. 527; *Gulf C. & S. F. Railroad Co. v. Cole,* 8 Tex. Civ. App. 635 (28 S. W. Rep. 391). Evidently authority is denied on the ground that the agent may not bind the company with respect to the transportation of goods beyond the point to which it, through him, has agreed to carry them. Here the defendant undertook to carry the corn to Chicago; no farther. The station agent's power to fix the rates to that point is not questioned. See *Wood v. Railway Co.,* 68 Iowa, 491. Beyond that point it was under no obligation to carry the corn. Nor does it appear to have had a joint rate or other arrangement with the connecting line. In what way, then, was this defendant interested in fixing the charges to be exacted beyond Chicago on another road? None at all. If not, the agent had no apparent authority to do so for it. There is a wide difference between making

a contract which shall bind the principal to carry to a
point beyond its line for a certain rate and what another
company shall charge for transporting from the terminus
of the initial line to such point. In the first instance he
is acting for the company employing him; in the last he
is attempting to stipulate, in behalf of his company, what
another shall do. Clearly, there was nothing in his situa-
tion as local station agent calculated to impress the public
with the notion that he was authorized to agree in behalf
of defendant to what the charges of the Baltimore & Ohio
Company would be. If it be said the rate named by the bill
clerk was for through transportation by the defendant, a
sufficient answer is that the written contracts accepted by
employes acting for the plaintiff stipulated otherwise. No
claim is made but that the contents of the bills of lading
were understood, nor is there any doubt that shipments
were actually made according to their terms. See *Mulligan
v. Railway Co., supra.* Unless the alleged oral statements
had reference to these bills, and shipments thereunder were
made in pursuance thereof, nothing has been done by
virtue of said alleged oral arrangement concerning
rates. It should be noted that there is no evidence
whatever in the record as to the clerk's authority, save the
showing of the capacity in which he was employed and his un-
disputed testimony that he was not authorized to fix rates be-
yond defendant's line. Appellant insists no issue was
raised as to the agent's authority. Unless he had power
to act for the defendant, it did not enter into any agree-
ment. Hence the burden of proof to show that he, by
his oral statement bound the company, was on plaintiff,
and the issue with respect thereto raised by the general
denial.—Affirmed.