Mr. Justice HUNT
 

 delivered the opinion of the court.
 

 The several causes of error assigned present four separate principles, and we will consider the questions which they raise in their order. The questions may be thus stated:
 

 First.
 
 As to the power of the railroad company to contract as a common carrier for the transportation of property beyond the terminus of its own road.
 

 The distinction between the liability of a carrier, in carrying goods upon his own line, and in forwarding them when the duty to carry is at an end, is well defined. In the language of Mr. Justice Davis, in
 
 Railroad Company
 
 v.
 
 Manufacturing Company,
 

 *
 

 “ It is the duty of the carrier, in the absence of auy special contract, to carry safely to the end of his line, and to deliver to the next carrier in the route beyond.” What constitutes a sufficient delivery to the succeeding carrier is often a difficult question, but we have no occasion to embarrass ourselves with it here.
 

 The fair result of the American cases limits the carrier’s liability as such, when no special contract is made, to his own line, although there are cases which hold the liability as continuing the same throughout the whole route, and such is the English doctrine. A discussion on this point is unnecessary, as the judge on the trial held the rule as we have stated it, and as was most favorable to the defendants.. He charged the jury that the defendants were only liable upon a contract to be proved that they had assumed a liability beyond that imposed by law.
 

 The defendants were an incorporation organized under
 
 *130
 
 the general railroad law of the State of New York. They possessed the powers given to corporations generally and were subject to the corresponding liabilities.
 
 *
 

 Assuming the case to stand upon the general principles applicable to the question, the doctrine that a railroad company may subject itself to the obligations of a carrier beyond its own line, has been distinctly held in the State of New York, where this contract was made; in the State of Massachusetts, where its performance was to be completed, and in the State of Vermont, where the alleged injury occurred.
 
 †
 

 In the case of
 
 Burtis
 
 v.
 
 Buffalo and St. Lawrence Railroad, supra,
 
 it was held that this principle applied to connecting roads extending beyond the limits of the State. The single exception to this holding, so far as we are aware, is in the State of Connecticut, where the contrary has been held by its Supreme Court.
 
 ‡
 

 This case, however, does not stand upon the general principle only. By the statutes of New York
 
 §
 
 it is enacted as follows: “ Any railroad company receiving freight for transportation shall be entitled to the same rights and subject to the same responsibilities as common carriers. Whenever two or more railroad companies are connected together, any company owning either of said roads receiving freight to be transported to any place on the line of either of said roads so connected shall be liable as common carriers for the delivery of such freight at such-place. In case any such company shall become liable to pay any sum by reason of the
 
 *131
 
 neglect of any other company or companies, the company paying such sum may collect the same of the company by whose neglect it became so liable.” This statute is declared by Rappallo, J., in
 
 Moot
 
 v.
 
 Great Western Railroad,
 

 *
 

 to be declaratory merely.
 

 We do not see that there is room to doubt the power of the company to make the contract in question.
 

 Second.
 
 Was there evidence in this case that the Ogdensburg and Lake Champlain Railroad Company did contract as a common carrier to transport this property beyond its own terminus over other roads to Boston ?
 

 The weight, the force, or the degree of the evidence is not before us, if there was competent evidence, on which the jury might lawfully find the existence of the contract alleged.
 
 †
 

 Both the authority of Graves, the station agent, to make the contract, and the evidence of Pratt and others of the making of the contract, we.re questions of fact for the consideration of the jury. If the jury have found in the plaintiffs’ favor on these points, upon evidence legally sufficient to justify it, this court canuot interfere with their findings.
 

 The evidence on both these points may properly be considered at the same time. Pratt testified that he had for many years been in the habit of transporting horses over the defendants’ road to Boston, to the number of two hundred a year, and that Graves had been the station agent at Potsdam for five or six years; that nearly a week before the present shipment Graves engaged to give him on that day two good stock-ears to carry his horses to Boston, and that the cars furnished by Graves had always come over these roads and delivered the horses in Boston, and that the arrangements made by him were recognized by the other roads; that Graves’s office was in the Potsdam freight-house, and that he paid the freight through, sometimes a.t Potsdam
 
 *132
 
 and sometimes at Boston; that on this occasion he agreed with Graves upon the price through to Boston, viz., $85 a car, and that a way-bill was made out for the horses and cars to Boston at the price mentioned. Other witnesses give testimony in corroboration, which it is not necessary to refer to. Graves testified that he was the station-master at Potsdam, and that the cars were billed from Potsdam to Boston, via Concord, as per bill; that the price agreed upon was not paid in advance, but it might have been.
 

 The way-bill was headed thus: “ Way-bill of merchandise transported by Ogdensburg and Lake Champlain Railroad Company from Potsdam Junction to Boston via Concord, March 28th, 1868.” It describes the two cars with horses, and as consigned to Pratt & Brigham, at Boston.
 

 We see no sound objection to the admission of this waybill as evidence. If a written contract, it was not only evidence, but the best evidence of what the contract was. It was exhibited to Pratt before the cars were started, as a part of the transaction.
 

 If not a contract, it was an act done and a declaration made by the agent in the very act of transacting the business, and as a part of it, which brought it within the principle of the
 
 res gestee.
 

 This evidence shows that the oral engagement was “ to carry his horses to Boston,” not to carry to Rouse’s Point and thence to forward to Boston, but “to carry” as well and as fully over the Vermont and Massachusetts roads as over the Ogdensburg road.
 

 Again, a specific price was agreed upon for transportation over the whole route. This was in accordance with the practice, and whether paid at Potsdam or at Boston was unimportant. This practice had been continued for years, and the jury had the right to hold the contract to be the same, without reference to prepayment or postpayment. The jury were justified in inferring that where a carrier fixes a ■price for transportation over the whole route, that he makes the entire contract his own. One who carries simply over his own line, and thence forwards by other lines, would ordi
 
 *133
 
 narily, the jury may say, make or collect his own charges and leave the remaining charges to be collected by those performing the remaining service. Receipt of the entire pay affords a fair presumption of an entire contract.
 

 The language of the way-bill is quite expressive. It describes “ merchandise transported . . . from Potsdam to Boston.” Transported or carried are equivalent terms, and quite distinct from the idea of forwarding. Whether looked upon as a contract, or as a declaration, or an admission simply, the way-bill furnishes evidence that the Ogdensburg company undertook to carry the horses to Boston.
 

 In
 
 Moot
 
 v.
 
 Great Western
 

 *
 

 in speaking of the contract to transport as a common carrier over other lines, the court say: “ Such an undertaking may be established by express contract, or by showing that the company held itself out as a carrier for the entire distance, or received freight for the entire distance, or other circumstances indicating an understanding that it was to carry through.”
 

 We think there was competent evidence before the jury that the company undertook to carry this property to Boston, and the jury having found such to be the fact, the other companies are to be deemed the agents of the defendants, for whose faults they are responsible.
 

 Third.
 
 The loss, it is contended, arose from the defective condition of the car in which the horses were placed, whereby it was exposed to danger from fire. It is said that Pratt was aware of the defective condition of the car; that he voluntarily made use of it, and that the risk of loss by its use thus became his aud ceased to be that of the company. The judge charged the jury that it was the duty of the carrier to furnish suitable vehicles for transportation; that if he furnished unfit or unsafe vehicles he is not exempted from responsibility by the fact that the shipper knew them to be defective and used them; that nothing less than a direct agreement by the shipper to' assume the risk would have that effect.
 

 
 *134
 
 There was a conflict in the testimony upon the point whether other cars were to be had. Pratt testified that he was compelled to take these cars or wait with his horses for a week. The station-agent testified that there were other cars which Pratt might have had if he preferred them.
 

 The authorities sustain the position taken by the judge at the trial.
 

 In
 
 New Jersey Steam Navigation Company
 
 v.
 
 Merchants' Bank
 

 *
 

 Mr. Justice Nelson says: “If it is competent at all for the carrier to stipulate for the gross negligence of himself and servants or agents, in the transportation of goods, it should be required to be done at least in terms that would leave no doubt as to the meaning of the parties.”
 

 To this effect are the New York and Massachusetts cases before cited.
 

 In
 
 Railroad Company
 
 v.
 
 Manvfaciuring
 
 Company
 
 †
 
 it was declared that the court did not intend to relax the rule by which the liability of carriers was established. In
 
 Railroad Company
 
 v.
 
 Lockwood
 

 ‡
 

 the following, among other propositions, were reiterated and established by the unanimous judgment of the court:
 

 1st. That a common carrier cannot lawfully stipulate for exemption from responsibility when such exemption is not just and reasonable in the eye of the law.
 

 2d. That it is not just and reasonable in the eye of the law for a common carrier to stipulate for exemption from responsibility for the negligence of himself or his servants.
 

 The judge at the trial in this ease might have gone much further than he did, and have charged that if the jury found the company to have been negligent and careless in furnishing cars, they would not be relieved from responsibility, although there had been an agreement that they should not be liable therefor.
 

 Fourth.
 
 It is contended that there was error in the admission of evidence on the trial. The admission of the way
 
 *135
 
 bill we have considered, and we think it was properly admitted.
 

 When the plaintiff, Pratt, was on the stand, as a witness the following question was put to him: “ In these acts of Graves in furnishing cars and making agreements, for transportation through to Boston, as testified by you, for whom did he assume to act ?” This question was objected to by the defendants, and the objection was overruled. We think this question was erroneous in its form, and that, as insisted by the defendants, he should have been asked to state only what was said and doue. The error was, however, harmless. That Graves was acting for the Ogdensburg company was disputed by no one. All that had been testified to, showed it. Graves himself testified that he was so acting, and there was no evidence or pretence to the contrary, either on the trial or the argument. The question is as to the effect of his acts, and not as to whether he acted for the company. His authority has not been repudiated by the company at any time or in any form. We have often held that we will not reverse a judgment on account of an error which clearly appears to have produced no injury.
 

 Two suggestions are made by the counsel for the plaintiffs in error which require consideration.
 

 The first is that the rules of the Vermont Central road forbade the use of combustible material in the cars on their road, and that if known to- the plaintiffs, and the contract were made in reference to them, the presence of this material in the car while on their road was a bar to the action. The answer to this suggestion is, first, that there is no competent evidence of such contract and agreement; and second, that the contract was made with the Ogdensburg road alone. The shippers were strangers to the rules as well as to the owners of the Vermont road. Their dealings were with the Ogdensburg road only, one of whose agents aided in putting the litter into the car, and the rules of which company were not violated by that act.
 

 The second suggestion is that some of the horses iujured were not placed in the cars till they were at Rouse’s Point,
 
 *136
 
 beyond the terminus of the defendants’ road. The contract was in substance for transportation over the Ogdensburg road of all the horses. For the convenience of the shipper he was allowed to put them on board at different points. This was an incidental circumstance merely, and does not affect the contract. If it receives the full price for the transportation of all the property from Potsdam to Boston it is evidently to the advantage of the company if it escapes the danger incident thereto for a portion of the distance. The power to contract for the whole distance of all the horses, and the making of such contract, and the receipt of the compensation specified, fix the rights of the parties. The precise details of its performance are not essential.
 

 Judgment affirmed.
 

 *
 

 16 Wallace, 324.
 

 *
 

 New York, Laws of, 1848, p. 221; Same, Laws of, 1850, p. 211.
 

 †
 

 Bissell
 
 v.
 
 Michigan Railroad, 22 New York, 258; Buffett
 
 v.
 
 Troy and Boston Bailrond, 40 Id. 168; Root
 
 v.
 
 Great Western Railroad, 45 Id. 524; Burtis
 
 v.
 
 Buffalo and St. Lawrence Railroad, 24 Id. 269; Hill Manufacturing Co v. Boston and Lowell Railroad Co., 101 Massachusetts, 122; Feital v. Middlesex Railroad, 109 Id. 306; Noyes v. Rutland and Bennington Railroad Co., 27 Vermont, 110; Morse v. Brainerd, 41 Id. 550; Railroad Co.
 
 v.
 
 Manufacturing Co., 16 Wallace, 324; Evansville and Crawfordsville Railroad Co. v. Androscoggin Mills.
 

 ‡
 

 Converse v. N. and N. Y. Transportation Co., 33 Connecticut, 166; 22 Id. 502.
 

 §
 

 Statutes of 1847, 299, § 9; 2 Revved Statutes, 5th edition, 693, g 67.
 

 *
 

 45 New York, 524.
 

 †
 

 Dirst
 
 v.
 
 Morris, 14 Wallace, 484;; Mills a. .Smith, 8 Id: 27.
 

 *
 

 Supra,
 
 p. 131.
 

 *
 

 6 Howard, 344, 383.
 

 †
 

 16 Wallace, 318.
 

 ‡
 

 17 Wallace, 357.