## STEWART v. TERRE HAUTE & I. R. Co.

*(Circuit Court, E. D. Missouri.   October 1, 1880.)*

1. COMMON CARRIER—LIABILITY BEYOND ROUTE.—In the absence of a special contract the liability of a common carrier does not extend beyond the terminus of his own route.

2. SAME—SAME—EVIDENCE.—Such contract is not established, however, by proof that the carrier accepted the goods with knowledge of their destination, and named the through rate for the same.

Motion for Judgment.

*G. S. Van Wagoner*, for plaintiff.

*E. W. Pattison*, for defendant.

McCRARY, C. J.   In July, 1877, the plaintiff shipped upon defendant's railroad 248 head of cattle, at East St. Louis, consigned to Rankin & Thompson, at Buffalo, New York.   The defendant's line of railroad extends only as far east as Indianapolis, Indiana, and the cattle would, in order to reach Buffalo, pass over the defendant's line and that of several connecting lines.   It is admitted that the cattle were transported with safety, and without unnecessary delay, over the defendant's road, and delivered to a connecting railroad to be taken on towards their destination, but it is claimed by plaintiff that after the cargo passed beyond the defendant's road there was delay in the transportation, by which he is damaged and for which the defendant is liable; this, upon the ground that the defendant agreed to transport the cattle over the entire route to Buffalo.   The plaintiff having closed his evidence in chief, the defendant moves for judgment, on the ground that the plaintiff's proof does not establish a contract to carry through to Buffalo, but only a contract to carry over its own line and deliver to the next carrier.

The facts proved by plaintiff, so far as they bear upon the question of the character of the contract, are as follows: Plaintiff informed the agent of the defendant at East St. Louis that he desired to ship a lot of cattle to Buffalo, and inquired of said agent whether the defendant was shipping and would take the cattle for shipment.   The agent replied that they

were shipping at that time, and could take the cattle; and, in answer to an inquiry by the plaintiff, informed him that the through rate to Buffalo was $70 per car. The plaintiff thereupon agreed to ship over defendant's road, and did so. The freight was paid, at the end of the route, to the last shipper, as was customary in such cases, and each of the lines over which the shipment passed received its proportion, the defendant receiving payment only for the carriage to Indianapolis. There was no written contract, but a memorandum was made by the defendant's agent showing the number of the cars on which the cattle were shipped, the name of the shipper, the number of cattle, the names of the consignees, and the destination.

Plaintiff had been in the habit of shipping over defendant's line to points beyond its terminus; and the arrangements made in this case were similar to the previous transactions. Does this evidence establish a special contract on the part of the defendant to carry through to Buffalo? The supreme court of the United States has twice laid down the rule that in the absence of a special contract the carrier in such a case is liable only to the extent of his own route, and for the safe storage and delivery to the next carrier. *Railroad Co.* v. *Manufacturing Co.* 16 Wall. 318; *Railroad Co.* v. *Pratt*, 22 Wall. 123. And the same doctrine prevails in most of the states, as will be seen by reference to the following, among other cases: *Darling* v. *Railroad*, 11 Allen, 295; *Notting* v. *Railroad Co.* 1 Gray, 502; *Burroughs* v. *Railroad Co.* 100 Mass. 26; *Railroad Co.* v. *Berry*, 68 Pa. St. 272; *Root* v. *Railroad Co.* 45 N. Y. 524; *Babcock* v. *Railroad Co.* 49 N. Y. 491; *Converse* v. *Trans. Co.* 33 Conn. 166; *Perkins* v. *Railroad Co.* 47 Me. 573; *Bank* v. *Trans. Co.* 23 Vt. 209; *Bintnall* v. *Railroad Co.* 32 Vt. 673; *Express Co.* v. *Rush*, 24 Ind. 403; *McMillan* v. *Railroad Co.* 10 Mich. 119; *Hoagland* v. *Railroad Co.* 39 Mo. 451; and *Coates* v. *Express Co.* 45 Mo. 238.

It is clear that the first carrier may, by special contract, bind himself to carry freight over his own and other lines to its final destination; but upon the question, what will amount to proof sufficient to establish such a contract? there is more

difficulty. In the case of *Railroad Co.* v. *Pratt, supra,* Mr. Justice Hunt discussed the question whether there was evidence enough in that case tending to prove a special contract to carry through, to justify the court in submitting the question to the jury. This question was decided in the affirmative, but whether the evidence would have been regarded by the court as sufficient to establish the special contract, had that been the question, does not appear. It is well settled that, where there is any competent evidence tending to establish the fact in controversy, it is proper to go to the jury. Where a jury is waived, as in this case, the court is to determine not only the competency but the sufficiency of the evidence. In the case of *Railroad Co.* v. *Pratt, supra,* the following material facts appeared, which are not established in the present case: "*First,* the agent of the railroad company expressly agreed to furnish the plaintiff two good stock cars to carry his horses to Boston; *second,* that on previous shipments the cars furnished by such agent had always carried the horses through to Boston, and that the arrangements made by such agent had always been recognized by the other roads; *third,* at the time of the shipment a way-bill was made out, which showed that the horses were to be 'transported by the Ogdensburg & Lake Champlain Railroad Company (the company sued) from Pottsdam Junction to Boston, *via* Concord.'"

It was held that these facts, in connection with the further fact that the plaintiff had been for many years in the habit of transporting horses over defendant's road to Boston, and that a rate for the whole route was agreed upon and paid, would justify the jury in finding that there was an engagement to carry the horses through to Boston. It does not appear, from the report of that case, whether the first carrier was paid the price agreed upon for transportation over the whole route, but I infer that such was the case from the remark of the court that the "receipt of the entire pay affords a fair presumption of an entire contract." In the present case the question is whether a special contract on the part of the defendant to carry through to Buffalo is established by proof that

the cattle were delivered to defendant; that its agent knew of their destination; and that he named the price to be charged for carrying through to Buffalo, the price having been paid at the end of the route, and to the last carrier. The fact that the defendant gave the through rate with knowledge of the point of destination is most relied upon by plaintiff. Ordinarily, men contract with reference to the use or disposition of their own property, and do not undertake to control that of others. It follows, I think, that a contract by which one carrier agrees to carry freight over a railroad belonging to and under the control of another, being out of the usual course, must be established by something more clear and definite than by proving the fact that such carrier has named a through rate. It is commonly known that it is the duty of a railroad agent to inform himself and advise all inquirers as to the rates of fare and freight to distant points, and it would be a hard rule that would make the giving of this information equivalent to an agreement to carry to all such distant points.

If it had appeared in evidence that there was an arrangement between the several lines comprising the through route by which each was the agent of all the others to solicit and ship freight over the combined through line, the case would have been very different, and I think that such proof would have been sufficient to make out a *prima facie* case for the plaintiff. This for the reason that in such a case each of the several companies may be regarded as operating the whole line as if it was its owner, and therefore its contracts would be presumed to run to the destination of the freight anywhere upon such line, unless the contrary should appear. But, in the absence of any further showing, the naming of the through rate and knowledge of the destination of the freight are not enough.

Motion sustained.