HARDING and others *v.* INTERNATIONAL NAVIGATION Co.[*]

(*Circuit Court, E. D. Pennsylvania.* April 10, 1882.)

1. COMMON CARRIER — THROUGH BILL OF LADING — LIABILITY FOR DAMAGE BY INDEPENDENT CARRIER.

Each carrier on a through bill of lading, is liable only as respects his own line, in the absence of a different understanding.

2. SAME—TRANSPORTATION BY LIGHTERS BETWEEN WHARVES OF TWO STEAM-SHIP LINES.

Where a carrier operating a line between Antwerp and Philadelphia issued a through bill of lading from Antwerp to Boston, stipulating that the goods were to be transported to Philadelphia by steamer, and from thence to Boston, either by water or rail, and that the responsibility of each carrier should be limited to each line, *held,* that it was not liable for injury to the goods on board of lighters which it had employed to transport the goods three miles by water from its wharf in Philadelphia to the wharf, in the same city, of a steam-ship line to Boston.

3. SAME.

The employment of the lighters in such case *held* to be not ordinary lighterage service, but a carriage by water over a necessary part of the route to Boston.

Libel by George W. Harding and others against the International Navigation Company, to recover for injury to goods of plaintiffs carried by defendants. The facts were as follows:

The International Navigation Company was a Pennsylvania corporation, operating, between Antwerp and Philadelphia, a line of vessels owned by the Societe Anonyme de Navigation Belge-Americaine. In November, 1879, it received at Antwerp a quantity of wool consigned to libellants at Boston, and issued therefor a bill of lading headed, "Through Bill of Lading of the International Navigation Company, via the steam-ships of the Societe Anonyme de Navigation Belge-Americaine, between Antwerp and Philadelphia, and the Pennsylvania Railroad Company and its connections, or other railroad companies or steamers or *lighters,* from Philadelphia to point of destination." "From Antwerp to Boston, via *Philadelphia.*"

*Reported by Frank P. Prichard, Esq., of the Philadelphia bar.

The material parts of the contract set forth in the bill of lading were as follows :

" To be transported from Antwerp to Philadelphia by the steam-ship Nederland, (with the privilege of calling at Southampton,) and delivered to the International Navigation Company (Red Star Line) at the port of Philadelphia, and thence to be transported by rail, steam, or sail, at the option of the said International Navigation Company, to Boston, U. S. A., and delivered in like good order unto order, or to ——— assigns, on payment of the freight and charges thereon.

\* \* \* \* \* \* \* \* \* \*

"The responsibility of each carrier shall be limited to its own line.

\* \* . \* \* \* \* \* \* \* \*

" It is further stipulated and agreed that in case of any loss, detriment, or damage done to or sustained by any of the property herein receipted for during such transportation, whereby any legal liability or responsibility shall or may be incurred, that company alone shall be held answerable therefor in whose actual custody the same may be at the time of the happening of such loss, detriment, or damage."

The wool arrived safely at Philadelphia and was unloaded at the wharf of respondents at Girard Point, Philadelphia. Respondents then employed R. Patterson & Son, the owners of a number of lighters used in harbor transportation, to transport the wool to the wharf of the Boston Steam-ship Company, also in Philadelphia, but three miles distant from respondents' wharf. The lighters were unroofed barges, such as were ordinarily used for harbor transportation, it being customary to protect perishable cargoes while on board of them by means of tarpaulins. While the wool was being thus transported to the wharf of the Boston Steam-ship Company it was damaged by rain in consequence of not being properly protected by tarpaulins, and was shipped to Boston and delivered to libellants in this damaged condition. Libellants then filed this libel to recover their loss by such damage.

*John D. Bryant* and *Henry Flanders,* for libellants.
*Morton P. Henry* and *R. C. McMurtrie,* for respondents.

BUTLER, D. J.   Notwithstanding the existence of contrary decisions, it is quite well settled in this country, that each carrier on a through bill of lading is liable only as respects his own line, in the absence of different understanding.   Such different understanding may be shown, however, either by express contract, or the existence of circumstances from which it should be inferred: Lawrence, Carriers, § 24; Redfield, Carriers, § 180.   That such is the rule in the federal courts is shown by *Railroad Co.* v. *Pratt,* 22 Wall. 123.

In our case the carriage was on a through bill from Antwerp to Boston, via Philadelphia.   The respondents' line, (to which the Nederland belonged,) terminated at Philadelphia, from which point the transportation was to be continued by water or rail, and necessarily through the agency of other carriers.   From Philadelphia to Boston, therefore, respondents' relation to the shippers was not that of

carriers, unless they contracted to assume it. In the absence of such contract they were forwarders, simply. As before stated, such a contract may be shown by express stipulation, or by inference from circumstances. Here there was no express stipulation to this effect. There are circumstances, (such as collecting freight in advance for the entire route, etc.,) which, standing alone, might justify an inference that the respondents contracted as carriers throughout. But such inference is completely repelled by the terms of the bill of lading. The respondents, unwilling, as it appears, to trust their responsibility respecting the transportation beyond Philadelphia, to the conclusion of law before stated, or to incur the danger of inferences of fact such as have just been referred to, expressly stipulated that "the responsibility of each carrier shall be limited to each line," and that "in case any loss, detriment or damage done to, or sustained by any of the property herein receipted for, during such transportation, whereby any legal responsibility shall or may be incurred, that company shall alone be answerable therefor in whose actual custody the same may be at the time of happening of such loss or damage." However significant the circumstances referred to might be in the absence of this stipulation, with it they are unimportant. Nothing is left to inference. That this stipulation encounters no legal objection is plain. It corresponds, as we have seen, with a legal presumption.

The case of *Hooper* v. *Wells*, 27 Cal. 11, cited by the libellants, contains nothing new. The defendant, an express company, was a carrier throughout the journey. Not only did it undertake to *deliver to the consignee*, but the carriage was over its own route the entire distance, and the property was in the *hands of its own messenger* when lost. That it did not own or control the vessel on which the messenger traveled, was unimportant. The defendant limited its responsibility by stipulating that it was a "forwarder," simply; and the construction of this stipulation gave rise to the only question in the case. It was construed to have the same effect as the ordinary stipulation required by forwarders against risks peculiar to their obligation, relieving them from everything save the consequences of negligence. This the court held to have been the intention of the parties, saying, "The stipulation simply means that the defendant would not assume the extraordinary responsibility of common carriers and become insurers. * * * There is no stipulation against negligence on the part of defendants or their employes in transmitting the goods. The limit is fixed by reference to another class of

bailees, * * * and the meaning as we construe it, is that the defendants will be governed in respect to liability by the same rules as are applicable there—to forwarders." .The court further says the printed words in the contract "not to be liable beyond our route," are inapplicable and without effect, because "the defendants' route extended the whole distance." The case I repeat contains nothing new.

It is urged, however, that a distinction should be made between the carriage from Girard Point, (where the Nederland discharged,) to the Boston Steam-ship Company's wharf,—three miles distant,— and the carriage thence to Boston; that the former, at least, was by the respondents, through their agents; and as the negligence complained of occurred here they are responsible. I cannot, however, adopt this view. That the merchandise was carried between these points, in "lighters," is of no consequence. It was not ordinary lighterage service. It was a carriage by water, over a necessary part of the route to Boston. That the appropriate vessels were "lighters" is unimportant. The respondents had no line over this part of the route. They did not do the carrying, and had no means of doing it. It was just as necessary to forward by other, independent carriers, here, as over the balance of the route to Boston. The distance has no influence on the question. Patterson & Sons, to whom the merchandise was delivered, are reputable transporters, wholly independent of the respondents, having appropriate vessels, for the service required, plying between these points. The respondents, therefore, were justified in making delivery to them; and they were no more the respondents' agents than was the Boston Steam-ship Company in the subsequent transportation. They are distinctly within the terms of exemption quoted from the bill of lading, and as distinctly within its spirit. The respondents were unwilling to assume the duties and responsibilities of carriers where they had not the means of carriage, and could not therefore control the agencies employed. To guard against misconception they had this inserted in the contract. They had no more control over the agencies employed between Girard Point, and the steam-ship company's wharf, than over those employed between the · latter point and Boston. · Appeal is made to the interest manifested by respondents in the transportation by the "lighters," as evidence of their understanding of the contract. If the contract was open to the interpretation claimed, and this manifestation of interest stood alone, it might be entitled to some weight. The contract, however, is not open to such interpretation; and *if it were*

the respondents' correspondence at the time shows that they did not so understand it. The interest manifested, therefore, must be attributed to the respondents' zeal in the shippers' or consignees' welfare.

The libel must be dismissed with costs.