## Page v. Chicago, St. P., M. & O. Ry. Co.

1. In the absence of a special contract, the liability of a common carrier accepting freight for a place beyond its usual route ceases when such freight is properly delivered to a competent carrier carrying to the place of address or connected with those who thus carry. Comp. Laws, sec. 3905.

2. A local station agent, as such, has no power, without further authorization, express or implied, to bind his company by a contract to transport freight beyond its line.

3. It is, however, entirely competent for a carrier to contract to carry freight beyond its own line, and if it does so undertake, such contract is binding upon it.

4. Such contract may be shown, not only by express stipulation of the authorized agent of the carrier, but by facts and circumstances created by itself, indicating that it was thus to carry through.

5. An agreement upon and payment of one entire and solid compensation to the place of destination, and the sending by the carrier of a car of the connecting line over which such freight was to pass, upon and after an agreement with the local agent that the shipper was to have a through car, so that the freight should not be subject to be unloaded or handled in transit, are circumstances sufficiently tending to show a through con-

tract to entitle such evidence to go to the jury upon the question of whether or not the carrier made or recognized such a contract.

FULLER, J., dissenting.

(Syllabus by the Court.   Opinion filed August 3, 1895.)

Appeal from circuit court, Davison county.   HON. D. HANEY, Judge.

Action to recover damages.   Plaintiff had judgment, and defendant appeals.   Affirmed.

The facts are stated in the opinion.

*H. H. Keith* and *D. A. Mizener* for appellant.

The acceptance of freight by a common carrier for a place beyond his usual route, and naming the shipper a through rate, does not therefor amount to a through contract.   Stewart v. Railroad, 3 Fed. 768; Converse v. Trans. Co., 6 Am. L. Reg. 214; McCarthy v. Railroad, 9 Mo. App. 159; Railroad v. Kerr, 8 So. 330.   An instruction which is misleading because it does not go far enough, or by reason of an omission, and which may have caused the jury to arrive at a wrong conclusion, is cause for reversal.   Babbett v. Bumpus, 41 N. W. 417; Memhardt v. Mode, 5 So. 672.   A common carrier is not bound by a contract made by a station agent for transportation of goods to a point beyond his own line, unless such agent had express or implied authority, or the carrier holds himself out as a common carrier to such point.   Grover v. Missouri, 70 Mo. 672; Burroughs v. Railroad, 100 Mass. 26; Railroad v. Pratt, 22 Wall. 123; Patterson v. Kansas, 47 Mo. App. 570; Wait v. Albany, 5 Lansing 477; Bickford v. 107 Memer, N. Y. 490.

*Preston & Hannet* for respondent.

A common carrier is not bound to assume responsibility for the transportation of goods beyond his own line—but his acceptance of goods for carriage directed to a point beyond his route is *prima facie* a contract for delivering at the destination.   Erie v. Wilcox, 25 Am. 451; Root v. Railroad, 45 N. Y. 524; Quimby v. Vanderbilt, 17 N. Y. 306; Jennings v. Grand Trunk, 49 Am. & Eng. Rail. Cos. 98.   Instructions are to be considered in their combination and entirety, and not as though each instruction was en-

titled to present the whole law of the case. .People v. Dayell, 48 Cal, 85; Smith v. Carr, 16 Com. 455. If the facts are in dispute, or, if undisputed, they are such that different impartial minds might fairly draw different conclusions from them, they should be submitted to a jury. Bates v. Fremont, 4 S. D. 394; 57 N. W. 73.

KELLAM, J. This is an action to recover for damages to a car load of popcorn shipped by respondent from Mitchell, S. D., over appellant's road. The corn was consigned to a party in Boston, and it is practically undisputed that it was damaged in transit, but after it left appellant's line of road. It is evident that the rights of the respondent and the liabilities of appellant must depend upon the contract under which the corn was shipped. If appellant made a through contract, by which it undertook to transport the corn through from Mitchell to Boston, then it may be liable; but unless it did by contract undertake to do more than to carry it safely over its own line, then it would not be liable for injuries occurring on other lines after its own duty had been discharged by properly delivering it in good condition to such connecting line. This is statute law. Comp. Laws, sec. 3905. At the conclusion of the evidence the court refused to direct a verdict for the defendant, and, under instructions excepted to by defendant, submitted the questions in issue to the jury, who found for the plaintiff. From the judgment entered thereon the defendant appeals.

While, as already stated, the duty of appellant company, in the absence of a different contract, was fully performed when it safely carried the corn to the terminus of its own line and delivered it in good condition to the connecting line; yet it was entirely competent for it to make a contract to carry it through to Boston, and if it did so undertake, such contract would be binding upon it. Railroad Co. v. Pratt, 22 Wall. 132; Hill Manuf'g Co. v. Boston & L. R. Corp., 104 Mass. 122; Quimby v. Vanderbilt, 17 N. Y. 306; Condict v. Railway Co., 54 N. Y. 500. It is probably equally well settled that a local station agent, as such, has no

power, without further authorization, express or implied, to bind his company by a contract to transport freight beyond its line. Grover & Baker Sewing Mach. Co. v. Missouri Pac. Ry. Co., 70 Mo. 672; Railroad Co. v. Pratt, *supra*; Burroughs v. Railroad Co., 100 Mass. 26; Wait v. Railroad Co., 5 Lans. 475.

Neither of these propositions is disputed by either party, but the claim of appellant is that there was no evidence in the case so tending to show an enlargement of the authority or power of the station agent, or a recognition by the company of the contract claimed to have been made, as to justify the submission to the jury of the question of his authority to bind the company by the contract which respondent claims he undertook to make. Assuming for the moment that the agent had authority to make a through contract, we think the question of whether he did so or not is settled affirmatively by the verdict of the jury, for they were distinctly charged by the court to find from the evidence what was the intention and understanding of the parties, as to whether the undertaking was to carry the corn through to Boston and in a through car, without transshipment, or simply to carry it to the end of appellant's road and deliver to a connecting line, and that, unless they found affirmatively on the first proposition, they could not find a verdict for the plaintiff. We conclude, therefore, that the open question in the case is this: Did the trial court err in submitting to the jury, against defendant's objection, the question of the station agent's authority to make and bind his company by a through contract? The settlement of this question will require an examination of the evidence. While the testimony of the station agent and the plaintiff may be in some respects discrepant, the question must be considered from the standpoint of the plaintiff's evidence, for the jury was entitled to accept his version of what was said and done as correct, and so the question before the trial court was, would the plaintiff's evidence, if accepted by the jury, sustain a verdict in his favor? The plaintiff after testifying that he had a lot of popcorn which he desired to ship, and that Mr. Obeland, appellant's station agent at Mitchell,

solicited the consignment, proceeded as follows: "Mr. Obeland said that he understood that I had a car of corn to ship to Boston and that he would like me to consign that corn over his road * * * I told him that if he would give me as good or better rate than the Milwaukee road would do, that I would consign over his line of road. He said he could not give me a rate, a cut rate, but he would write for instructions and see what he could do. I next saw him a week or ten days afterwards. He then said he had a rate,—that he had got instructions and had received a rate. That is all he said at that time. I then said I would ship over his road. That is all I said at that time. I next had a conversation with him in reference to the shipment of this freight, probably a week later at my place. He came out and asked me when I would be ready to ship, and when to order a car. I told him I would ship, and there was a conversation about a through car, and I made an agreement with him then for a new car and a through car, and a car that was not to be transferred,—no transferring of the goods,— through to Boston without a transfer. He said that he had received a rate, a lower rate than the Milwaukee was giving at that time. He stated the rate was 62½ cents. * * * I insisted on a car that must be a through car, without any transfer of goods. The freight was to be payable at Boston. I said that I would ship the corn if I could get the rate, a through car and a car that would not be transferred. He said that was the kind of a rate and the kind of a car that he would give me. Q. To whom did you instruct Mr. Obeland, if at all, to ship that corn to Boston? A. It was billed to James Spear. Q. What did he say in reference to the shipping of it to Mr. Spear? A. He said he would bill it through to Mr. Spear." By the testimony of Station Agent Obeland, it appeared that the car furnished for the shipment of this corn was not one of appellant's cars, but a new car of the Soo line, which connected with appellant's line at Minneapolis, and that he did not order a Soo car, and that he did not know who did. He further says: "I know how it came that the Soo car was sent here for that shipment. I ordered a car that I could load popcorn

in to be consigned to Boston, and they gave me a foreign car because we could not load any of our own cars off our own line. This car being sent care of Soo line, they gave me a Soo car. I suppose that is the reason."

It is very evident that no specific authorization of the agent Obeland is shown to make a through contract or a contract binding appellant company to carry this freight beyond the limits of its own road, but authority to contract and the contract may be inferred from facts and circumstances whose existence, if found to exist, could hardly be accounted for except upon the theory that the parties had mutually and authoritatively agreed upon what should be done. Accepting Page's testimony as correct, and, as before remarked, in the settlement of the immediate question now before us we must assume that the jury would have so accepted it, there could be little doubt that when the corn was accepted for shipment, both he and the agent understood that the understanding of the company was to take it thrวugh to Boston in the Soo car, into which it was loaded at Mitchell. If the agent did not so understand it, and Page's testimony is true, he was dealing fraudulently with Page, for by such testimony the exact condition under which the shipment was made by Page and received by the agent was that it was to be a through shipment in a car without a transfer. It is true, the testimony does not very directly or satisfactory connect the general freight agent or the other general officers of the company with such understanding between Page and the station agent, but we are inclined to think that, while the agent's authority could not be safely found from any one particular and isolated fact found, yet all the facts, with the inferences properly deducible therefrom, were sufficient to justify the court in submitting the question to the jury as one of fact, whether the company had so empowered the agent, or had recognized the contract claimed to have been made with him as binding upon it. First, a through price was given and agreed upon, which was to be the one and entire compensation for carrying through. In Railroad Co. v. Pratt, 22 Wall. 132, the court, in speaking of the significance of such fact,

says: "Again, a specific price was agreed upon for the transportation over the whole route. This was in accordance with the practice, and whether paid at Potsdam or at Boston was unimportant. * * * The jury were justified in inferring that, where a carrier fixes a price for transportation over the whole route, he makes the entire contract his own. One who carries simply over his own line, and thence forward by other lines, would ordinarily, the jury may say, make or collect his own charges, and leave the remaining charges to be collected by those performing the remaining service. Receipt of the entire pay affords a fair presumption of an entire contract." In Root v. Railroad Co., 45 N. Y. 532, the court, referring to the manner in which a through contract may be shown, said: "Such an undertaking may be established by express contract, or by showing that the company held itself out as a carrier for the entire distance, or received freight for the entire distance, or other circumstances indicating that it was to carry through." In Railroad Co. v. Copeland, 24 Ill. 332, where the question was as to the liability of the receiving company for the loss of baggage beyond its own line, where the owner had paid through fare to such first company, the court thus tersely put the undertaking of such company with the passenger: "You pay through, and you and your baggage shall be carried through." This view of the effect of a through payment was declared in Candee v. Railroad Co., 21 Wis. 587, to be a "safe, sound, and reasonable rule." In each of the following cases, the fixing and receipt of one entire compensation for the through route is spoken of as a circumstance, in connection with others, tending to show a through contract, or such a "connection in business" between the several lines as to make the first carrier liable for the whole route. Weed v. Railroad Co., 19 Wend. 534; Hart v. Railroad Co., 8 N. Y. 37; Wilcox v. Parmelee, 3 Sandf. 610; Nashua Lock Co. v. Worcester & N. R. Co., 48 N. H. 339; Chouteaux v. Leech, 18 Pa. St. 232; Steamboat Co. v. Brown, 54 Pa. St. 82. In 2 Pars. Cont. p. 212, the learned author, in speaking of what would tend to show a contract to carry through, says: "And his receipt of payment for the

whole route would be evidence going far to prove such undertaking."

We should be unwilling to hold that the payment and receipt of one entire compensation was sufficient of itself to establish a through contract, but we do think it reasonable, and justified by well considered authorities, to hold that it is of itself a fact to be considered, in connection with other circumstances, if any are shown, as going to show the intent and understanding, and therefore the contract, of the parties. It further appears that the car furnished for this shipment was not one of its own, but one of an eastern line. The agent says he did not order such car. Presumably, then, it was sent by the company. The agent accounted for this car being sent on the ground that appellant company did not send its own cars off its own line of road, but this would not explain if the company contemplated a transfer of this freight at Minneapolis, the end of its line. We do not regard the fact at all controlling, and, considered alone, would probably not be very important, but it is right in line with plaintiff's claim that the company was to take the corn through without transshipment, and, unexplained, was another circumstance from which, with others, the jury might infer an agreement so to do. The company did just what it seems to us it would have done if it fully understood that the corn was to be taken through without reloading. It sent, not one of its own cars, but one of a connecting line, over which the freight was to be transferred after it left the defendant's road. This circumstance, which the company itself created, would certainly confirm Page in the understanding that he had made a valid contract with the agent for a through car, and that the company was recognizing and carrying it out. As was said in Hill Manufacturing Co. v. Boston & L. R. Corp., 104 Mass. 135: "Such being their position, they offer to receive goods to be carried to New York. They receive them to be delivered there. They give a way bill for the entire distance. They take pay for transportation over the whole of the line. The whole course of proceedings is exactly what it would be if they meant to contract for the whole

distance, and to all appearances, as between them and the owner, the freight money is one indivisible item. We think these circumstances justify the inference that they assume the liability for the entire transit, relying upon a third party for indemnity against all risks occurring beyond their own limits." In the above case, the freight was billed through. In the case at bar, the appellant attaches much importance to the fact that this corn was billed only to Minneapolis, but the billing was the act of the station agent. If he billed it through to Boston, as Page swears he said he would, the company would doubtless have claimed, as now, that he had no authority to, and did not bind it by so doing. It nowhere appears that Page knew that it was not billed through, as he testifies it was to be, but was only billed to Minneapolis. The fact that it was so billed without Page's knowledge is only important as tending to show the agent's understanding of the contract. It is not controlling.

Suppose a shipper applies to the station agent at Pierre, on the Northwestern Railway, for a rate and a through car to Mitchell on the Milwaukee road. The agent informs him that he will get him a rate from his superior officers. He afterwards gives him the rate so received. The shipper accepts the terms, and the company, from its headquarters, sends him a Milwaukee car, which he accepts and loads. Can it be fairly said that there is nothing in such facts, unexplained, tending to show a knowledge and an understanding on the part of the company that he was to have a through car? It would not prove such contract, and its probative force might be weak, but it would not be immaterial, certainly, when considered in connection with other circumstances, such as the payment of one entire compensation to the point of destination. Through shipments of freight under one entire contract with the receiving carrier, over its own and connecting lines, are not unfrequent or extraordinary transactions, and while the carrier, like any other party is only liable upon such contract as it has made, the making of the contract may be inferred from its conduct and attending circumstances which it creates. It would be

wrong and intolerable to hold that such contract could only be shown by evidence of an express and formulated agreement by the manager or general freight officers of such carrier. In this case the facts and circumstances, as testified to by Page, in our opinion tended to show an understanding by the company that it was to take the corn through to Boston without change of cars. As against the evidence of the station agent, it might not have satisfied us that such was the company's understanding; but it was a question of fact, and under an instruction which we think stated the law correctly and with fairness to both sides, the jury found the fact in favor of the plaintiff. The other assignments of error are generally subordinate to, and controlled by, the views we have here expressed upon the main question. We have examined them all, and see no good reason for disturbing the judgment of the trial court, and the same is affirmed.

CORSON, P. J., concurs.

FULLER, J. (dissenting.) I cannot concur. There was no evidence before the jury tending to establish a through contract, entered into between plaintiff and some one authorized to bind the defendant company. The general freight agent was not requested to authorize the proposed agreement, nor did he even quote a through rate to his agent at Mitchell, with whom plaintiff alone transacted the business. The rate furnished was from Minneapolis to Boston, to which the local station agent added the printed schedule rate from Mitchell to Minneapolis. It may be reasonably inferred that the local agent would have quoted a through rate in the first instance without consulting his superior officer had he known the tariff from Minneapolis to Boston, because he testified that he never made a rate beyond the company's line unless he had a printed rate, and that in this case, when he obtained the rate over connecting lines, he merely added thereto the rate from Mitchell to Minneapolis, and simply informed the plaintiff what it would cost per hundred weight to ship the corn from Mitchell to Boston. Mr. Obeland, the local agent, and the

only person with whom plaintiff dealt, testified positively that he was not authorized by any superior officer of the company to make a contract to ship a through car from Mitchell to Boston and his evidence in that particular is undisputed. Plaintiff knew that the defendant was not operating a continuous line of railway from Mitchell to Boston, and knew that the agent at Mitchell was unable to quote him a rate beyond the point where the car would be transferred to a connecting line. According to plaintiff's own testimony, nothing was said by either party about a through car until after the contract to consign the corn over defendant's line was entered into. Here is the agreement, as stated by plaintiff upon the witness stand: "I told him, if he would give me as good or better rate than the Milwaukee road would do, that I would consign over his line of road. He said he could not give me a rate, a cut rate, but would write for instructions and see what he could do. That is all he said at that time. I next saw him a week or ten days afterwards in the Knights of Pythias hall. He then said he had a rate,—that he had got instructions, and had received a rate. That is all he said at that time. I then said I would ship over his road. That is all I said at that time." True it is, plaintiff testified that he made an agreement with the station agent a week or so later for a new car, from which the corn would not be transferred until it reached its destination, but in the absence of authority conferred by a qualified superior officer, or a course of dealing from which authority may be inferred, it is conceded in the majority opinion that a station agent, as such, has no power to bind his company by a contract to transport property beyond its own line.

No importance should be attached to the fact that a new Soo car was sent to Mitchell, because the agent testified that he was never allowed to load a car off his company's line. The corn was billed to Minneapolis in care of the Soo line, and there is no claim that its contents were damaged while thus in transit. Defendant's liability ceased when the car reached the end of the company's route and was delivered in good order to the next carrier. Comp.

Laws, § 3905. Plaintiff paid the freight for the entire route to the company that carried the corn into Boston, and it does not affirmatively appear that defendant ever received any consideration for transporting the car from Mitchell to Minneapolis. If plaintiff, as stated by Judge KELLAM, believed that he had entered into a through contract, why did he not make a claim for damages against the defendant to the agent at his home station, with whom the purported agreement was made? There is nothing in the record to indicate that any demand for damages was ever made upon the defendant, but it does affirmately appear that plaintiff, for fully a year after the shipment was made, looked to the company at Boston to whom he paid the freight. The following letters were received in evidence without objection:

### EXHIBIT A.

"Butte Farm, Sept. 24, '91. Dear Sir: My claim will be in the hands of an attorney by Oct. 1. Can I expect anything like a settlement before that date, and avoid a suit?

"Yours truly,

"Paul E. Page, Mitchell, S. D.

"B. D. Webber, Boston, Mass."

### EXHIBIT B.

"Butte Farm, July 14, 1891. B. D. Webber, Boston, Mass.— Dear Sir: Last fall I shipped from this point a car load of popcorn, shipped in car No. 20,070 and consigned to James Spears, Boston. The corn was damaged in transit and you instructed Mr. Spears to sell the corn for what he could, and that your company would make up the loss. Wm. F. Brooks & Co. have been looking after the claim, but in writing them I can get very little information. Will you please let me know in what shape the claim is, what the prospects for an early settlement, and what Brooks & Co. have done? Yours, respct., Paul E. Page, Mitchell, S. D."

Assuming the evidence of plaintiff to be uncontradicted, and viewing it in a most favorable light, I find nothing to justify or support an inference that any authority was ever conferred upon

Agent Obeland, to make a contract to carry the property of plaintiff beyond the defendant's line of railway, and the record discloses no conduct on the part of any superior officer from which a jury could infer such authority.

At the conclusion of the testimony, and before the case was submitted to the jury, counsel for appellant moved the court to direct a verdict for defendant for the reasons: "That the alleged contract on the part of the plaintiff is void, as it is claimed to have been made with a station agent to ship a car beyond the defendant's line of road, to wit, from Mitchell to Boston, which the station agent has no authority to do without express authorization on the part of defendant company, and the evidence shows that he had no such authority. Upon the further ground that there is no evidence in the case to show that he was held out by the company as an agent to receive goods for it and to bind the company in shipping the corn in question from Mitchell to Boston; that there is no question of ostensible agency in this case, there being no proof to show that this agent ever received any goods from any person or persons at Mitchell, to ship to any point beyond the line of its road." It was said in Stewart v. Railroad Co., 3 Fed. 768 that "in the absence of a special contract, the liability of a common carrier does not extend beyond the limits of his own route, and such contract is not established by proof that the carrier accepted the goods with a knowledge of their destination and named the through rate for the same." From the headnote in McCarthy v. Railway Co,, 9 Mo. App. 159, I quote the following: "The giving of a through rate to the shipper by the carrier is not of itself evidence of a special contract to carry beyond the company's line."

It is as clearly out of the usual course of business for a railroad company to contract with reference to the use of other companies' lines, as it is for a man to contract with reference to the use of his neighbor's horse and carriage; and in the face of the undisputed evidence that the defendant had nothing to do with the transaction, beyond the quoting of a rate from Minneapolis to Boston, and in the absence of anything to indicate a course of dealing or

an arrangement between the various lines over which plaintiff's property was transported, it is an exceedingly harsh rule that construes the furnishing of such information by a company to its station agent into an agreement entered into by a railroad company to carry property to a distant point over continuous lines not under the control or supervision of the company that receives such property for shipment. It follows, therefore, that the agent at Mitchell had no authority to make a binding contract to carry to Boston, and the mere naming of a partial rate by one having authority to bind his company by such a contract was simply to furnish information. for the benefit of a proposed customer of his line of railway, and to hold that such advice constitutes evidence of an agreement to carry over connecting lines to distant points would be liable to make the officers of common carriers exceedingly cautious about furnishing the public with necessary information. I think the motion should have been sustained, and the judgment appealed from should be reversed.