Peelle, Ch. J.,
delivered the opinion of the court:
The claim herein arises out of the deduction made by the accounting officers of the Treasury Department — in their settlement with the claimant for other services — for the value *578 of certain military equipment consisting of rifles, revolvers, haversacks, canteens, etc., lost or destroyed while in transit over the tracks of the Louisville and Nashville Railroad Company under a contract between the Government and the claimant herein for the transportation of the 69th Regiment N. Y. Volunteer Infantry, its camp equipage and impedimenta from Fernandina, Fla., to Huntsville, Ala.
The members of the regiment and effects aforesaid were carried on a train composed of three sections, the first carrying the freight and baggage, while the other two sections carried the passengers, with their rifles, revolvers, etc., in the cars with them; and while en route pursuant to said contract on August 28, 1898, the first passenger section, carrying about four hundred members of said regiment, and while running at a high rate of speed on the tracks of said Louisville and Nashville Railroad, was wrecked near Birmingham, Ala., and two of their members were killed and 32 severely injured.
On the next day, as set forth in the findings, it was ascertained that in consequence of said wreck a considerable portion of the arms and paraphernalia carried by the troops in the cars were missing, and later, on September 2, 1898, a board of survey appointed therefor reported that the articles carried by said troops and for which deduction was made were missing, amounting in all, as thereafter estimated by a subsequent board of survey, to $1,387.91.
After the transportation of said regiment and its effects over its own and connecting lines the claimant was paid according to contract, and later, after the value of the articles so lost or destroyed had been ascertained, as set forth in Finding III, the amount thereof was deducted from money due the claimant for other like services performed by it for the Government.
Though the contract did not provide that in case of loss the number and value of the articles should be ascertained and fixed by a military board, and though the claimant was not present when either of the boards acted, still as the findings of both the boards were brought into the case without objection, and there is some evidence tending to corroborate *579 the same, tbe court assumes that both parties are satisfied that the articles lost and their value are fairly stated.
The claimant contends that a contract of carriage was entered into, and that having performed its contract, the Government had no legal right to thereafter make the deduction from money due it for other services, though this latter contention is not covered by the averments of the petition.
The contract may well be treated as a through contract of carriage, obligating the claimant for delivery to a connecting carrier (Railroad Co. v. Pratt, 22 Wall., 123, 132), thereby rendering the claimant liable, notwithstanding the loss occurred over the tracks of the Louisville and Nashville Eailroad Company, and, too, whether the wrecked train was under the control of the claimant’s agent or the agents of the Louisville and Nashville Railroad Company (Railroad Co. v. McCarty, 96 U. S., 258, 266).
The latter case was for the transportation by the Ohio and Mississippi Eailroad Company of 16 carloads of cattle from East St. Louis to Philadelphia. Delay in transportation was alleged, and on reaching Parkersburg the Baltimore and Ohio Eailroad Company refused to take the cattle, despite said agreement, unless the owner of the cattle would sign a paper exonerating it from anything that might happen. The court in construing the contract said:
. The contract with the defendant was for the transportation of the cattle the entire distance they were to go. It was stipulated that the company would forward “ sixteen cars, more or less, from East St. Louis to Philadelphia, at the rate of $130 per car, which is a reduced rate, made expressly in consideration or this agreement.” No other company was named, there was no mention of compensation to any other party, and nothing was said of a change to the cars of any other company on the way. Such corporations, unless forbidden by their charters, have the power to contract for shipments the entire distance over any connecting lines. Railroad Company v. Pratt (22 Wall., 123) is conclusive in this court upon the subject. The principle is so well settled in this country that a further citation of authorities in support of it is unnecessary. Such is also the rule of the English law. Both here and there the company is liable in all respects upon the other lines as upon its own. In such cases the public has a right to assume that the contracting company has made all the arrangements necessary to the fulfillment *580 of the obligations it has assumed. (The Great Western Railway Co. v. Blake, 7 H. & N., 986; Weed v. Railroad Company, 19 Wend. (N. Y.), 534; Knight v. Portland, Saco & Portsmouth Railroad Co., 56 Me., 234.)
The terms of the contract herein render it unnecessary to consider the distinction between the rule in England and the United States respecting the liability of a carrier who receives goods, in the absence of a special contract, for transportation beyond his own line (Muschamp v. Lancaster R. R., 8 M. & W., 421; Railroad Co. v. Manufacturing Co., 16 Wall., 318), though if that were material the English rule, holding the first carrier liable in such case for loss or damage, has been adopted in Florida, where the contract herein was made (Bennett v. Filyaw, 1 Fla., 403), as it has also in Alabama, the point of destination (Mobile R. R. v. Copeland, 63 Ala., 216, 223). See Eevised Statutes, section 721, and Western Union Telegraph Co. v. Call Publishing Co. (181 U. S., 92, 101).
This question is now regulated by the interstate-commerce act of June 29, 1906, section 20 (34 Stat. L., 584, 595), making the initial carrier who gives a receipt or bill of lading for the transportation of property from a point in one State to a point in another liable for any loss, damage, or injury which may occur over its own or any connecting line, with the right to reimbursement, however, by the carrier over whose line such loss, damage, or injury may have occurred, as in said section provided.
As set forth in Finding II, the contract recites the “ movement of troops from Fernandina to Huntsville, Ala.;” and the through rate per capita for officers and enlisted men and their baggage was fixed, which rate was paid to the claimant; and there being no showing to the contrary the presumption is that the claimant settled with the Louisville and Nashville Eailroad Company for their pro rata share of the rate for the transportation over the line of its road. (Cutts v. Brainerd, 42 Vt., 566; Reed v. Saratoga R. R. Co., 19 Wendell (N. Y.), 534.)
Here, then, is an action to recover from the Government money which was withheld by its officers and applied to the payment of an ascertained loss which the Government sus *581 tained through its employment by special contract with the claimant as a common carrier. Treating the action as one to recover a balance claimed to be due for services rendered— and such is the tenor of the fifth paragraph of the petition— the claimant must fail, as the loss is shown to have been caused by the wreck of the train without any fault whatever on the part of the Government or its officers, and is not shown to otherwise fall within the recognized rules exempting the claimant from the liability which it assumed in the carriage.
There appears to have been no controversy before the accounting officers as to the amount of loss as reported by the board of survey — the usual military method of ascertaining such a loss — and if we were to assume that the amount first paid to the claimant for transporting troops and supplies without deduction for the loss was a mistake either in law or fact, the same could be recovered back. In the case of the Wisconsin Central R. R. Co. v. United States (164 U. S., 190, 212), affirming the judgment of this court (22 C. Cls. R., 366, 394) respecting money paid out by officers of the Government under a mistake of law, the court said:
“ The doctrine that money paid can be recovered back when paid in mistake of fact and not of law does not have so general application to public officers using the funds of the people as to individuals dealing with their own money, where nobody but themselves suffer for their ignorance, carelessness, or indiscretion, because in the former case the elements of agency and the authority and duty of officers, and their obligations to the public, of which all persons dealing with them are bound to take notice, are always involved.” We concur in these views and are of opinion that there is nothing on this record to take the case out of the scope of the principle that parties receiving moneys illegally paid by a public officer are liable eoa cequo et bono to refund them.
Furthermore, if the action should be considered one to recover a balance wrongfully withheld the defendants would be entitled to recoupment, as on a counterclaim, for the amount of the ascertained loss as, under paragraph 2 of section 1 of the act of March 3, 1887 (24 Stat. L., p. 505), the court’s jurisdiction extends to “ all set-offs, counterclaims, claims for damages, whether liquidated or unliquidated, or other demands whatsoever on the part of the Government of *582 the United States against any claimant against the Government in said court.” And in the case just cited (p. 212), where only a general traverse was filed, and where the question was raised in the Supreme Court for the first time, a counterclaim was allowed, the court in respect thereto saying : “ It is now said that a counterclaim or set-off should have been pleaded, but the record does not disclose that this objection was raised below, while the findings of fact show that the entire matter was before the court for, and received, adjudication. Moreover, it has been repeatedly held that the forms of pleading in the Court of Claims are not of so strict a character as to require omissions of this kind to be held fatal to the rendition of-such judgment as the facts demand (United States v. Burns, 12 Wall., 246, 254; Clark v. United States, 95 U. S., 539, 543; United States v. Behan, 110 U. S., 338, 347; United States v. Carr, 132 U. S., 644, 650).”
The rulings of the Supreme Court respecting the pleadings in this court in such cases are to the effect that where the whole question is before the court a set-off or counterclaim, without any formal pleading therefor, may be allowed by way of recoupment against any claimant who establishes his right to recover on a claim against the Government. In the present case the whole question is presented by the claimant’s petition, wherein, in substance, it is averred in paragraph 4 that the amount claimed was deducted from the amount found due under the contract; and, further, by paragraph 5 a denial is interposed as to the loss or destruction of the articles for which the deduction is made; and it is averred that the amount therefor “ is improperly and unlawfully withheld.” The findings of fact also disclose the whole case, whatever the form of action may be considered.
This case, therefore, differs from the case of United States v. Mitchell (205 U. S., 161, 168), wherein the claimant sought one month’s extra pay as a captain for service in the late Spanish war, averring the service and the honorable discharge necessary to entitle him thereto — there being nothing in the pleadings to show that any sum had previously been improvidently paid by the Auditor for the War Department — and the court held that in the absence of the filing *583 of a set-off or counterclaim they would not overhaul the allowance by the Auditor for the War Department under the circumstances of that case — that the payment, if made in error, did not determine the question before them within the decision in the case of Hite v. United States (204 U. S., 343).
Therefore — treating the action as one to recover a balance unlawfully withheld — while it would have been the more regular and the better practice for the Government to have filed a formal pleading setting up a counterclaim, the petition and traverse herein, followed by the evidence, bring the whole question before the court; and as the Government is seeking no affirmative relief beyond the recoupment of the claimant’s demand we must hold that the claimant is not entitled to recover.
The petition is dismissed.