## L. & N. R. R. Co. v. J. Rash & Co.

(Decided December 16, 1910.)

## Appeal from Warren Circuit Court.

1. Carriers of Live Stock.—Where live stock are injured by reason of defects in a car, the carrier will be liable for the damage sustained.

2. Same—Waiver.—Where a shipper ordered a car for a particular purpose, which the carrier agreed to furnish, but substituted in place of it a defective and insufficient car for the purpose in-

tended, the shipper did not waive his right to recover damages by shipping the stock in the car that was furnished.

CHAS. H. MOORMAN, BENJAMIN D. WARFIELD and SIMS & RODES for appellant.

R. C. P. THOMAS and T. W. THOMAS for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This action was brought by the appellees to recover damages from the appellant company for injuries received by some of the horses in a car load shipped by the appellees over the railroad of appellant from Lexington to Bowling Green. Upon a trial, the appellees recovered judgment for $250, and the railroad company appeals.

It appears that Porter, a member of the firm of Rash & Company, bought in Lexington eighteen thoroughbred horses. These horses were placed in the Gentry Stock Yards situated on a belt line that connected with the Louisville & Nashville railroad. On September 24th, Porter ordered from the appellant company, and they agreed to furnish to him, an Arms palace car that would carry eighteen horses, and this car was to be sent to the Gentry Stock Yards where the horses were to be loaded and shipped to Bowling Green. After making this arrangement, Porter gave directions to the persons in charge of the Gentry Stock Yards, or R. L. Baker, perhaps both, to load the stock in the car when it was sent around, and then left Lexington for his home in Bowling Green. On the following day the railroad company sent to the stock yards, not the Arms palace car contracted for and stipulated in the bill of lading, but a car known as a Burton car, with a capacity for only sixteen horses.

The evidence shows very clearly that the car furnished by the railroad company and in which the horses were loaded was not as well constructed or equipped for the shipment of horses as the car contracted for. Nor was it large enough in which to ship comfortably and safely the horses. After the stock was loaded, they were taken by the Cincinnati Southern railway to the point on the belt line at which the Louisville & Nashville railroad intersects it, for the purpose of being delivered to the latter railroad. On their way from the stock

yards to this point the horses were injured. Just how the injuries happened is not clearly shown, but there is enough from which to infer that they were due to the fact that the car was not suitable for the purpose of shipping the horses put in it.

When the car reached the line of the Louisville & Nashville railroad, the horses as well as the car were in such condition that the agent of the Louisville & Nashville Railroad Company removed the horses from the car and put them in another car, in which they were shipped from Lexington to Bowling Green. The car in which the horses were shipped from Lexington to Bowling Green was an Arms palace car, but an old and unsuitable car, very different from the one that was ordered. There is some evidence that the horses received the injuries on the road from Lexington to Bowling Green and after they were placed in this substituted car, although the weight of the evidence is that the injuries were received in transit from the stock yard to the Louisville & Nashville Railroad Company's line.

It is the contention of appellant that the facts do not show that it did not furnish the kind of car ordered, and further insisted that the car it did furnish was accepted by the agents of appellees and the horses loaded therein by them. It is also argued that the injury to the horses was not due to any defect in the car but to their own viciousness, and, therefore, the jury should have been peremptorily instructed to find for the appellant.

The evidence is very satisfactory that the appellant did not furnish at the stock yards the kind or quality of car that it agreed to furnish, and it is clear that the horses were not shipped from Lexington to Bowling Green in a car of the kind or quality that was ordered, and that the appellant agreed to furnish. So that, the appellant committed two breaches of its contract.

The evidence also shows that the horses were injured by the defective construction of one or both of these cars, and not by their own viciousness. It follows from this that the railroad company is liable to the appellees for the damage they sustained by reason of its breach of contract, unless appellees are estopped from asserting a claim for damages on account of the failure to furnish the car that was ordered. Upon this point it is insisted for the railroad company that its breach in this particular was waived by the action of the agents of the appellees in accepting and loading the horses into the

car that was furnished. Under no circumstances could the doctrine of waiver be applied to the second car as it is not claimed that appellees had anything to do with the transfer of the horses into this car. But, as to the first car, there is some evidence that the agents of appellees with notice that it was not the car ordered, loaded the horses in it. The appellant does not present any sufficient excuse for its failure to furnish the car that was ordered and the one it agreed to furnish. This being so, it is well settled that when a shipper orders a car for a particular purpose and this purpose is known to the carrier and it agrees to furnish the kind of car ordered, that his acceptance of a car other than the one ordered does not generally constitute a waiver of his right to recover damages for injuries caused by the defective condition or insufficiency of the car that he accepts. There might be a case in which the acceptance of a car other than the one ordered would be a waiver, but the facts of this case do not bring it within the exception.

This point was expressly decided by the Supreme Court of the United States in Ogdensburg R. Co. v. Pratt, 89 U. S., 123, 22 L. Ed., 827, a case very similar to this one. In that case, an action was brought to recover damages for the value of horses killed and injured while being transported by the railroad company. One of the questions presented was: ''Did the plaintiffs by putting their horses into a car which they knew was defective and unsuitable thereby assume the risk of such defects and relieve the company from the responsibility of the same?'' In discussing this question, the court said:

''The loss, it is contended, arose from the defective condition of the car in which the horses were placed, whereby it was exposed to danger from fire. It is said that Pratt was aware of the defective condition of the car; that he voluntarily made use of it, and that the risk of loss by its use thus became his and ceased to be that of the company. The judge charged the jury that it was the duty of the carrier to furnish suitable vehicles for transportation; that if he furnished unfit or unsafe vehicles he is not exempted from responsibility by the fact that the shipper knew them to be defective and used them; that nothing less than a direct agreement by the shipper to assume the risk would have that effect. * * * The judge at the trial in this case might have gone much further than he did, and have charged that if

the jury found the Company to have been negligent and careless in furnishing cars, they would not be relieved from responsibility, although there had been an agreement that they should not be liable therefor.''

To the same effect is Elliott on Railroads, sections 1470-80; Hutchinson on Carriers, sections 508-9; Forrester v. Southern R. Co., 147 N. C., 553; 18 L. R. A., N. S., 509; Atlantic Coast Line R. Co. v. Geraty, 166 Fed. Rep. 10, 20 L. R. A., N. S. 310; Coupland v. Husatonic Ry. Co., 61 Conn. 531; 15 L. R. A., N. S., 534; Railroad Co. v. Dies, 91 Tenn. 177, 30 Am. St. Rep., 871.

A few other minor but harmless errors are pointed out, but we do not think it worth while to discuss them, as the principal question raised by counsel, which was his right to a peremptory, has been disposed of.

Wherefore, the judgment is affirmed.